# Weakley *et al. v.* Gurley's Adm'r.

*Bill in Equity by Administrator, for Settlement of Decedent's Estate.*

1. *Settlement of administrator's accounts, at suit of administrator de bonis non.*—An administrator *de bonis non*, having cited his predecessor to a settlement in the Probate Court, can not afterwards have the settlement transferred to the Chancery Court, under a bill filed by him for a settlement of his own administration.

2. *Probate decree ordering sale of lands for payment of debts.*—A probate decree, ordering lands to be sold for the payment of debts by an administrator, ought to specify whether the sale should be for cash, or on credit; but the failure to so specify makes it, in effect, an order to sell for cash, and does not affect its validity.

3. *Same; widow's claim of dower in such lands.*—When lands are sold by an administrator, under a probate decree for the payment of debts; and the purchasers, by agreement with the widow, pay her a compensation in money for her claim to dower in the lands; they are not entitled to an abatement of the purchase-money, to the extent of the sum so paid, nor is their claim of the right to such abatement any obstacle to a resale of the lands at their risk.

4. *Parol agreement contradicting judgment.*—An administrator, having allowed creditors to obtain judgments at law against him, can not obtain equitable relief against such judgments, on an averment that they were rendered upon "an agreement and understanding that no effort was to be made to charge him personally, or to charge the sureties upon his bond, with the amount of such judgments."

5. *Bill of conformity by administrator; when does not lie.*—An administrator can not maintain a bill of conformity against the creditors of the estate, who have obtained judgments at law against him, on the ground that the estate has become insolvent by reason of the depreciation in the value of property gen-

[Weakley et al. v. Gurley's Adm'r.]

erally, when it appears that, if he had exercised due diligence in the administration, the debts might have been paid before any depreciation occurred.

6. *Settlement of decedent's estate; when removed into equity.*—The distributees of a decedent's estate may, at any time before proceedings for a settlement have been commenced in the Probate Court, remove the settlement into the Chancery Court, without the assignment of any special reason; but the administrator can not file a bill for that purpose, without showing the existence of some special reason for the interposition of a court of equity; and the involved and complicated condition of the affairs of the estate, when caused by his own neglect and breach of duty, is not a sufficient reason to support such a bill.

APPEAL from the Chancery Court of Madison.

Heard before the Hon. HENRY C. SPEAKE.

The bill in this case was filed on the 30th March, 1877, by F. L. Hammond, as the administrator *de bonis non* of the estate of John Gurley, deceased, against Frank B. Gurley, the administrator in chief, Mrs. Rebecca Gurley, the widow, and the several children of said decedent, as his heirs-at-law and distributees : and also against Ellen M. Weakley, Sallie P. Sale, as the executrix of the last will and testament of Charles C. Sale, her deceased husband, and several other persons, as creditors of said estate. Its material allegations, so far as necessary to a correct understanding of the points here decided, are stated in the opinion of the court. The prayer of the bill was in these words : "Your orator prays, that this honorable court will take jurisdiction of the settlement of the estate of said John Gurley, deceased; that, to that end, an account may be stated between said Frank B. Gurley and said estate, to finally settle his said administration; and that an account may be taken between your orator and said estate, to finally settle his administration upon said estate ; and that an order and decree of this court" [may be made], requiring the register of this court to sell all the real estate now belonging to the estate of said John Gurley, deceased, on such terms as the court may direct, and execute titles to the purchasers, and to put them in possession of the lands so sold ; and that the proceeds of the sale of such lands be paid into this court, to be administered under its direction. And your orator prays, that each of the said defendants be enjoined from proceeding in the Probate Court of Madison against your orator, for the settlement of the estate of said John Gurley, deceased. Your orator further prays, that the said Ellen M. Weakley, Sallie P. Sale, as the executrix of Charles C. Sale, and Elias B. Spragins, as administrator of Elias C. Spragins, deceased, be each enjoined from further prosecuting or collecting, or endeavoring to further prosecute or collect, any claim or claims which they may have or hold against the estate of said John Gurley, in any other court than the Chancery Court of this, the 5th district;

VOL. LX.

[Weakley et al. v. Gurley's Adm'r.]

and that the said Ellen M. Weakley be enjoined and restrained from further prosecuting a certain suit, pending in the Circuit Court of Madison county, Alabama, against your orator, and against Daniel B. Turner and Thomas W. Martin, as sureties on your orator's bond as administrator of said John Gurley's estate, wherein said Ellen M. Weakley claims of your orator one thousand dollars. And your orator prays for all other relief, general and special, to which he may be entitled on the case as stated."

Separate answers were filed by Spragins, Mrs. Weakley, and Mrs. Sale, in which were incorporated demurrers; and a joint demurrer was also filed by Frank B. Gurley and several of the heirs and distributees. The causes of demurrer assigned were—1st, that the bill was wanting in equity, because it showed that the complainant had full, complete, and adequate remedies at law; 2d, that it was multifarious; 3d, that it showed on its face no reason for removing the administration of the estate from the Probate Court, after proceedings had been commenced in that court. The chancellor overruled the demurrer, and his decree on the demurrer is now assigned as error, jointly and severally, by the defendants who demurred.

CABANISS & WARD, for the creditors, and LEWIS & ROBINSON for the other appellants.—1. The bill is multifarious. There is a manifest misjoinder of defendants, and an improper joinder of several distinct causes of action. The administrator in chief has no connection whatever with the claims of the creditors, or the controversies that have arisen between them and the complainant; nor has he any interest whatever in the matters of dispute between the complainant and the several purchasers of the lands at his sale. These creditors and purchasers, in like manner, have no interest in his settlement, nor any mutual and common interest in the claims of each other; and the decree in favor of Mrs. Gurley is separate and distinct from each and all of these other matters. *Kennedy v. Kennedy*, 2 Ala. 571; *Hardin v. Swoope*, 47 Ala. 273.

2. The bill is wanting in equity, because, as to each and all of these matters, there is a complete remedy at law, or in the Probate Court. The settlement of F. B. Gurley's administration has already been commenced in the Probate Court, and no reason is shown why it can not be finished in that court. Whether the sale of the lands by the administrator be valid or void, the powers of the Probate Court are fully adequate to grant the appropriate relief: by ratifying and confirming it, if valid; or by a resale, at the risk of the purchasers; or by granting another order of sale.

[Weakley et al. v. Gurley's Adm'r.]

3. As to the judgments against the administrator, the alleged verbal agreements are no defense, either at law or in equity.—*Paddock v. Palmer*, 19 Vermont, 581; *Briggs v. Law*, 4 John. Ch. 22; *Wright v. Barr*, 53 Mo. 340; *Grace v. Martin*, 47 Ala. 135; 12 Indiana, 383; *Knight v. Cherry*, Supreme Court of Missouri, cited in 5 Central Law Journal, August 3, 1877, p. 117.

4. An administrator cannot remove the settlement of his intestate's estate into equity, without alleging and proving some special circumstances showing the necessity for the transfer.—*Gould v. Hayes*, 19 Ala. 450; *McNeill v. McNeill*, 36 Ala. 115; *Hill v. Armistead*, at the last term. In this respect, the bill is defective. Whatever complication or embarrassment appears in the affairs of the estate, is the result of the complainant's own negligence and mismanagement; and he can not be allowed to take advantage of his own wrong, at the expense of creditors and distributees.

5. The bill can not be maintained as a bill of conformity. The precise object of such a bill is shown in 1 Story's Equity, §§ 544–5, and cases cited in notes; and the cases further show that such bills are not favored by the courts. Under these authorities, the bill is wanting in equity—1st, because, instead of "finding the affairs of his intestate so much involved that he can not safely administer the estate, except under the direction of a court of equity," it shows that the complication now existing has grown up under his own administration, and has resulted from his own neglect; 2d, because, instead of adjusting the claims of creditors, it shows that there is nothing about them to adjust—that the claims are just and valid, and that they have been satisfied by the purchases of land; and, 3d, because, instead of showing a necessity for the interposition of a court of equity, it shows an adequate remedy at law for each separate matter complained of.— See, also, *Buccle v. Atleo*, 2 Vernon, 37; *Blackwell's case*, 1 Vernon, 152; *Jackson v. Leaf*, 1 Jac. & W. 229; *Rush v. Higgs*, 4 Vesey, 638, and cases cited in notes.

D. D. SHELBY, *contra.*—1. The court should take jurisdiction, to protect the complainant against the creditors who have recovered judgments against him. On the facts alleged in the bill, which are admitted by the demurrer, the complainant had good reason to believe, when these judgments were rendered, that the lands would sell for enough to pay them in full; and the subsequent depreciation in the value of the lands, for which he is not responsible, now renders them insufficient, and leaves him personally liable, in viola-

tion of the agreement under which they were rendered.—2
Story's Equity, § 885; High on Injunctions, §§ 191, 830;
*Byrne v. McDow*, 23 Ala. 404; 4 Hen. & M. 460; Hilliard on
Injunctions, 326, 332; *Washington v. Emery*, 4 Jones' Eq.
N. C. 37–38; Freeman on Judgments, § 505, and cases cited;
*Thomson v. Palmer*, 2 Rich. 33; see, also, 16 Ala. 339; 5
Greenl. 33.

2. The jurisdiction of the court is maintainable, also, on
the ground of preventing a multiplicity of suits.—Story's
Eq. Pl. § 287; *Thomas v. Palmer, supra*. A bill may be ob-
jectionable for the opposite fault to that of multifariousness
—that is to say, for an improper splitting up of a single
cause of action, and undue multiplying of subjects of litiga-
tion. This objection might have been urged, if, on the facts
here stated, one bill had been filed to settle Gurley's admin-
istration; a second, to settle the complainant's administra-
tion; a third, to relieve him from being charged with the
lands decreed to Mrs. Gurley; and several others, against
Mrs. Weakley, Mrs. Sale, and Spragins, respectively. But
a court of equity will not permit a bill to be brought for a
part of a matter only, where the whole is the proper sub-
ject of one suit.

3. The bill is not multifarious. Its purpose is to protect
the administrator from individual liability on the judgments,
and to settle the estate; and this being its purpose, it was
necessary to give a history of the administration, and show
the condition of the estate. The purpose of the bill is
shown by its prayer, and the question of multifariousness
must be determined by the prayer for relief. The incorpor-
ation of matters as to which no relief is asked, or as to
which the complainant is not entitled to any relief, does not
make a bill multifarious.—Story's Eq. Pl. §§ 271, 271*a*, 271*b*,
283; *Pleasants v. Glasscock*, 1 Sm. & Mar. Ch. 17; *Dick v.
Dick*, 1 Hogan, 290; *McCabe v. Bellows*, 1 Allen, 269; *Carpen-
ter v. Hall*, 18 Ala. 439; *Lee v. Lee*, at the last term. As to
the objection of multifariousness, it is impossible to lay
down any rule universally applicable, and equally impossible
to reconcile all the adjudged cases; yet, as a general rule, all
parties are properly united in one bill, who have an interest
in the principal matter in controversy, though their interests
may be distinct, and may have arisen under different con-
tracts.—*Gaines v. Chew*, 3 How. U. S. 641; Story's Eq. Pl.
284, and note 4; *Larkins v. Biddle*, 21 Ala. 252; *Fleming v.
Gilmer*, 35 Ala. 67. In this case, the principal matter in
controversy is the land belonging to Gurley's estate, in
which all the parties to the bill are interested, or claim an
interest, as heirs, distributees, or creditors; and a court of

equity alone can settle their respective claims, and give the purchaser a good title.

MANNING, J.—Appellee, Hammond, administrator *de bonis non*, &c., of John Gurley, deceased, filed his bill of complaint in this cause, to remove his administration from the Probate Court of Madison county, into the Chancery Court. This is the principal object of the suit. It was brought March 30, 1877. In December, 1872, he had caused a citation to issue to Frank B. Gurley, his predecessor, and the first administrator of the estate, to settle his administration thereof, in the Probate Court. In January, 1873, Gurley "filed his statement, account, vouchers, and list of heirs, for a final settlement;" and the 28th day of February, 1873, was appointed for action by the court thereon. Then, and some few months afterwards, the matter was regularly continued, but nothing else was ever done in it subsequently. The proceeding seems to have been wholly neglected by both parties, and by the Probate Court, where it remains suspended. The settlement of this administration of Frank B. Gurley is also by the bill sought to be drawn into this cause in the Chancery Court. But it does not properly constitute any part of the present suit. Gurley's administration is a thing distinct from that of his successor, Hammond. The latter is entitled, certainly, to bring Gurley to a settlement, and to recover any assets that may remain in his hands unadministered; and under the statute, they will then become assets in Hammond's hands. So, likewise, would he have a right to sue for, and recover from any debtor of the estate, the moneys due from him to it; and they also would be assets for Hammond to administer. But no one would, therefore, suppose that a suit against such debtor could be comprehended in this bill, and carried forward *pari passu*, as a part of this administration cause, instead of being brought in a court of law. Yet such a suit would not be any more distinct from the present cause, than would be the proceeding to bring Gurley to a settlement. In cases of that kind, if litigation be necessary, it must be had in separate and independent suits against the parties supposed to be respectively liable. And it is only the fruits of them that Hammond would be required to account for in the settlement of his administration. Hence, whether the settlement of Gurley ought to be coerced in the Court of Probate, or in the Chancery Court, for which latter course no reason is shown, it is not in the present cause that it should be done.

2. The bill further sets forth, that Rebecca Gurley, widow

of appellee's intestate, had, by bill in chancery filed in 1868, sued for dower in the lands, about 1870 acres, of which her husband died seized, and in certain other lands of which he had been seized during her marriage to him, but which he had, in separate parcels, given to his sons, William, Frank, and Thomas, severally; and also for rent, according to the statute, for the lands of which he died seized; that commissioners, appointed by the chancellor, had set off, and reported, in November, 1872, about 540 acres of said land for the dower of said Rebecca, of which about 284 acres were of the lands that had been given by intestate to his sons; and that afterwards, in December, 1875, a decree in said cause, purporting to have been rendered by consent of all the parties, including appellee as administrator, assigned to said Rebecca 280 acres of said lands in fee-simple, in lieu of the parcels allotted to her by the commissioners, and ordered that $2,000 be paid to her by complainant (appellee), for rent of the lands of the estate since the death of intestate. But, complainant avers that the recital in the record in that cause, under date of January, 1872, that he had been made a party thereto in the place of the former administrator, Frank B. Gurley, and the recital of consent to the decree, are not true, so far as he is concerned; that the agreement to the consent-decree was made among the heirs of his intestate, without his participation, or consent, or knowledge; and that he had no information thereof, until a few days before the filing of the present bill.

The bill further alleges, that the $2,000 had been paid to said Rebecca, without complainant's authority or knowledge, by the said Thomas P. and Frank B. Gurley, who now claim that they were thus subrogated to her right to demand and have said sum from complainant; and that, insisting thereupon, they and some other persons, who respectively bought lands of the intestate, at a sale thereof made by complainant under an order of the Probate Court, to enable him to pay debts, refused to pay him therefor, and assert a right to set off said $2,000 and interest, under an arrangement among themselves, against the price they bid for said lands; of which they retain the possession.

In respect to this sale, or offer to sell, complainant was authorized, it seems, by a decree of the Probate Court, rendered in April, 1874, upon his petition, to sell 782 acres, part of the lands of said estate, to pay its debts; the sale to be made "at public outcry, at the court-house door in said county, in manner and form as the law directs in such cases, after having first given notice for at least three successive weeks, of the time, place and terms of sale, in the *Huntsville*

*Advocate,*" etc. Under this order, according to the bill, complainant advertised a sale of the lands in December, 1875, for cash ; at which sale Thomas P. Gurley bid off 200 acres, more or less, for $1,075 ; and James Hambrick bid off about 80 acres, for $305 ; and Ellen M. Weakley, Elias B. Spragins and Sallie P. Sale bid off 470 acres, more or less, for $3,461.38 ; and Louisa C. E. Vincent bid off about 40 acres, for $21, which she paid therefor,—the said Louisa being the only one of the persons who paid the prices they respectively bid. No account of this proceeding was rendered to the Probate Court, until the 14th of February, 1877 ; at which time, complainant reported the purchase and payment made by Mrs. Vincent, the sale to whom was confirmed, and in respect to the rest of the land, says that it " was all offered for sale, and bid off by different persons, who did not comply with the terms of said sale, or with any part thereof ; and the undersigned has again advertised all of said lands for sale, excepting the said forty acres purchased and paid for by the said Louisa C. Vincent."

The decree of sale made by the Probate Court is not alleged to be invalid, and does not appear to be so ; though it is averred in the bill that " said decree, by mistake, fails to show on what terms said land was to be sold." A decree to sell lands to pay debts, without authorizing any credit, is, in effect, an order to sell for cash. It is only when time is to be allowed for the payment of the whole, or a part of the purchase-money, that it is necessary, though it is always advisable, that the decree should specify the terms of sale. See Revised Code, §§ 2086, 2090, embraced in § 2456 of Code of 1876.

3. Upon averments which are substantially as above stated, one of the prayers of the bill in this cause is, that the Chancery Court will order " the register of this court to sell all of the real estate which now belongs to the estate of said decedent, on such terms as the court may direct." But, no legal reason is thus far shown, why that court should intervene to do so. Not only has the Probate Court all the authority necessary to this end, but, on complainant's application, made more than two years after his appointment, that court, in April, 1874, authorized him to sell all the land he then deemed necessary for the payment of the debts. Yet twenty months were suffered to elapse before he endeavored to avail himself of this authority ; and when all the persons but one, to whom the lands had been cried off, refused to pay for them, more than a year was allowed to pass away, before any report thereof was made, or any further effort to effectuate a sale. The alleged demand of the bidders,

that they should be allowed to set off the amount they claimed as due from complainant through Rebecca Gurley to them, against the price of the lands. or to pay this price therewith, was a pretension so destitute of support in law, that it could create no obstacle to a resale of the lands, at their risk. There was no order of confirmation by the Probate Court, of any sales to them; nor could the pretension referred to cast the slightest cloud, in the judgment of any body, upon the title that would be acquired by a purchaser at a subsequent sale, from the administrator; and since it is only with this part of the matter of the present bill, that the decree in Rebecca Gurley's suit for dower and rent can have any such relation as might bring it within the scope of this suit, the bill, if it were maintainable at all, would be multifarious for embracing that decree, had any relief been prayed for in respect thereto. But, perhaps because it is obviously irrelevant matter, the bill does not seek to set aside or vacate that decree.

4. It is further, however, alleged by complainant, that the defendants Ellen M. Weakley, Sallie P. Sale, and Robert S. Spragins, the latter as executor of Elias C. Spragins, deceased, having severally just claims against the estate of his intestate, brought their actions in the Circuit Court of Madison county, thereupon, against complainant as administrator; who, there being no assets of said estate except the lands, allowed them, in October, 1873, to take judgments therein, amounting all together to nearly $3,000, upon "an agreement and understanding, that no effort was to be made to charge him personally, or to charge the sureties upon his bond, with the amount of such judgments;" that notwithstanding this, said Ellen M. Weakley had, in 1876, brought suit in the Circuit Court of Madison county, against complainant and his bondsmen, and is now prosecuting the same; and that, although, at the time said judgments were taken, the land of said estate would have sold for money enough to pay the debts, it would not now do so, because of the great depreciation in its value, in consequence of the depreciation in the value of property generally. Complainant further alleges, that he has received as administrator only $21, and has paid out $263; that the personal estate is insufficient to pay the debts, and the real estate will have to be sold for that purpose; that, "in his opinion, said estate is insolvent;" that Frank B. Gurley gave a bond in $12,000, with Thomas P. Gurley and William R. Gurley as his sureties, and has never made a final settlement of his administration; that upon such settlement said Frank will be indebted to the estate in a large sum; and that the accounts

[Weakley et al: v. Gurley's Adm'r.]

between complainant and said Gurleys are too complicated to be settled in the Probate Court, and justice can only be done in the premises in a court of equity; wherefore he prays that court to take jurisdiction of all these matters, and settle the same, &c. There is, also, the general prayer for relief.

It is quite clear that complainant could not be allowed to prove that such an agreement and understanding as that he sets up was orally entered into with the judgment creditors mentioned, and thereby defeat the obvious effect of a judgment against him as administrator. Evidently, too, if this were permissible, it would have to be done in suits brought by him against the several parties to such separate judgments alone, and not against them jointly, or against them and other persons. The averment referred to affords no foundation for such a joinder.

5. Nor can the bill be maintained, in respect to these several creditors, upon any other averments therein, as a *bill of conformity*. If the property of the estate is so reduced in value, by the general shrinkage in values, as to be insufficient now to pay the debts which it was more than adequate formerly to discharge; yet, since it appears that, by due diligence in administration, the debts, might have been paid long ago, the administrator wholly fails to make out a case that entitles him to maintain such a bill. It comes rather under the censure mentioned by Justice Story, when he says: " Besides, it has been said, that these bills may be made use of by executors and administrators, to keep creditors out of their money longer than they otherwise would be."—1 Story's Eq. Jur. § 544.

6. It is rare that an estate, of the value of John Gurley's, is so free from complications that embarrass administration, as his estate appears to have been when complainant became administrator. During a period of over five years, according to his bills and exhibits, although nothing is shown that could hinder him in the performance of any of his duties, he has not collected from the former administrator any of the assets, which he says are in his hands; he has not sold any of the real estate, which was subject to be disposed of, to pay the debts, except $21 worth; he has not paid a dollar to any of the intestate's creditors; and now, when he is urged by them, and by the heirs, to pay the debts, and bring the administration to a close, he seeks to bundle up together all the various matters which touch the estate in any point, and to associate together all the different persons who, independently of one another, are connected with any of such separate matters, and bring them

[Weakley et al. v. Gurley's Adm'r.]

all thus intermixed and involved into the Court of Chancery as an administration cause. We are not aware of any authority for this. And such a course, if alllowable, would necessarily produce almost inextricable confusion, as well as greatly increase the delay and expense of the litigation.

In *Gould v. Hayes* (19 Ala. 450), speaking of the jurisdiction of courts of equity in matters of administration, this court said : " The remedy in the Orphans' [now Probate] Court being cheaper and more expeditious than that afforded by Chancery, this court, at an early day, doubtless more as a matter of sound policy, than of strict legal requirement, was inclined to confine heirs, distributees, &c. of a deceased person's estate, to the Orphans' Court, in cases where the powers of that court were adequate to administer full relief." It would be well, probably, if this policy had been more vigorously upheld. But, although the parties mentioned, the beneficiaries of an estate, are considered entitled to carry their cause into equity, at any time before the concurrent jurisdiction of the Probate Court over the settlement has attached, without assigning any special reason for doing so ; this privilege is not conceded to an executor, or administrator. When he undertakes to transfer the administration into chancery, he must assign a good equitable ground for asking that court to take jurisdiction of it.—*Moore v. Lesueur*, 33 Ala. 241 ; *McNeill v. McNeill*, 36 Ala. 115 ; *Hill v. Armistead*, at the last term. The statutes have provided for appeals from particular orders and rulings, as they from time to time are made by the Probate Court, in an estate undergoing administration, without suspending the power of that court over any other matter therein, and without removing the entire cause into the appellate court.—See § 3954 (2244), and those following it, in Code of 1876. But, when a cause in chancery is removed by appeal into this court, it comes here entire ; and in the meantime, there is an inconvenient suspension of the jurisdiction of the Chancery Court therein, which hinders it from carrying forward the business of administration.—*Burton v. Brown*, 22 Grattan, 1 ; *Moore v. Randolph*, 52 Ala. 530.

After a careful consideration of the case, we are of opinion that, for the reasons assigned in the demurrers, the bill is without equity.

The decree of the chancellor overruling the demurrer is, therefore, reversed ; and a decree will here be rendered sustaining the demurrer, dissolving the injunction obtained by complainant, and dismissing the bill, without prejudice to the filing of another.