# Moore v. Winston's Adm'r.

*Bill in Equity by Administrator of Insolvent Estate, to remove Settlement from Probate Court, and establish Defense against Creditor's Claim.*

1. *Probate Court; nature of jurisdiction.*—The Probate Court is a court of law, and does not possess chancery powers.

2. *Insolvent estates; removal of settlement into equity.*—In the settlement of insolvent estates, cases may arise in which the Probate Court, by reason of the want of equitable jurisdiction, can not administer adequate relief; but it requires a clear and strong case to justify the transfer of such settlement into the Chancery Court.

3. *Same; filing claims, and objections thereto.*—When a claim against an insolvent estate has been filed within the period prescribed by the statute, and no objection to its allowance is filed within the time allowed for filing objections (Code, §§ 2568, 2575), no objection to its validity or amount, as affected by matters existing at the expiration of the period allowed for filing claims, can afterwards be entertained by the Probate Court.

4. *Same; equitable relief against allowance of claim not objected to.*—No objection having been filed, within the prescribed period, to the allowance of a claim duly filed, if the administrator afterwards asks equitable relief against its allowance, he must show a state of facts which would entitle him to relief against a judgment at law; that is, he must show fraud by the creditor, mistake, or accident, and must negative negligence on his own part.

5. *Same; same.*—An administrator having placed in an attorney's hands, for collection, settlement, or compromise, certain notes given for the purchase-money of lands, and constituting a lien on the lands, though the principal and his sureties were insolvent; and the attorney having settled the debt with one of the sureties, who had taken the land from his principal, and promised to pay the notes, by agreeing to take back the land in satisfaction of the debt, and

[Moore v. Winston's Adm'r.]

to surrender the notes to said surety; which settlement was ratified and approved by the administrator, and the lands accordingly surrendered, but the notes were not delivered up to the surety; and the attorney's receipt for the notes was afterwards filed by the administrator, as a claim against the insolvent estate of the principal debtor, who died after the compromise was effected by the attorney; *held*, that the administrator *de bonis non* of the insolvent estate, who was appointed only four days before the expiration of the period allowed for filing objections to claims, and did not file any objections to the allowance of said claim, could not obtain equitable relief against the claim, because the attorney and the surety, to whom he applied for information, both assured him that the notes had been settled and discharged.

6.  *Attorney-at-law; duty as to filing claims against insolvent estate.*—It is not the duty of an attorney, having a claim for collection, to file it as a claim against the estate of the debtor, afterwards declared insolvent.

APPEAL from the Chancery Court of Franklin.

Heard before the Hon. H. C. SPEAKE.

The bill in this case was filed on the 19th September, 1879, by Lewis B. Thornton, as the administrator *de bonis non* of the insolvent estate of Thomas E. Winston, deceased, against James E. Moore; and sought to remove the settlement of said insolvent estate into equity, and to establish an equitable defense against a claim held by said James E. Moore, who had purchased the claim from one A. W. Ligon, as administrator of the estate of Isaac H. Walker, deceased. The case is brought to this court by the defendant, on appeal from the decree of the chancellor, overruling a demurrer to the bill for want of equity; and the overruling of the demurrer, on the several grounds specially assigned, is the only matter assigned as error.

A former case between the same parties, and involving substantially the same facts, was before this court at its December term, 1878, on appeal by the administrator from a decree rendered by the Probate Court of Franklin, disallowing the defense here set up against the claim filed by said Moore against the insolvent estate of said Winston; and the bill in this case was filed after the decision of this court on the former appeal.—*Thornton v. Moore*, 61 Ala. 347-54. Said Winston died in August, 1869, and letters of administration on his estate were granted by the Probate Court of Franklin, on the 22d October, 1869, to R. B. Lindsay, who reported the estate insolvent, and it was so declared by said Probate Court on the 18th April, 1872. Lindsay, according to the allegations of the bill, "ceased to be administrator of said estate on the 12th May, 1873," and Thornton, the complainant in this suit, "was appointed administrator *de bonis non* on the 14th April, 1873." On the 17th September, 1872, a claim was filed against said insolvent estate, duly verified by affidavit, by A. W. Ligon, as the administrator of the estate of Isaac H. Walker, deceased, which was thus entered on the schedule of claims in the Probate Court; "A. W. Ligon,

administrator of I. H. Walker, files the receipt of attorneys, W., L. B. & J. W. Cooper, for three several notes made by T. E. Winston *et al.*, due to W. H. Price, administrator of I. H. Walker, each for $802.72, bearing interest from date, December, 1860; one due December 17, '61; one December 17, '62, and one December 17, '63." The attorneys' receipt, thus filed, was dated the 17th March, 1869, and in these words: "We have this day received of Abner W. Ligon, administrator *de bonis non* of the estate of Isaac H. Walker, three several sealed notes made by Thomas E. Winston, John A. Steele, and William A. Peet; each due on the face to W. H. Price, administrator of the estate of Isaac H. Walker, and each for $802.72; each bearing interest from date, and dated December, 1860; one due 17th December, 1861, one due 17th December, 1862, and one due 17th December, 1863; which we hold for collection as attorneys;" signed by said attorneys.

Isaac H. Walker, to whose administrator the notes specified in said receipt were made payable, died prior to May, 1860; and in October, 1860, W. H. Price, to whom letters of administration on the estate had been granted, obtained an order from the Probate Court to sell the lands for the payment of debts. The sale was made on the 17th December, 1860, said Thomas E. Winston becoming the purchaser; and he gave said three notes for the purchase-money, according to the terms of the sale, with said Steele and Peet as his sureties. On the 11th May, 1875, Ligon, as administrator *de bonis non* of Walker's estate, obtained an order to sell certain unsettled claims due to said estate; at which sale, James E. Moore became the purchaser of the notes specified in said attorneys' receipt, as the bill alleged, "for $50"; and no objection to the allowance of the claim, as filed against the insolvent estate of Winston, having been interposed within twelve months after the declaration of insolvency, the Probate Court refused to entertain an objection on the part of the administrator, founded on the facts hereinafter stated; and its decree was affirmed by this court on appeal, as shown by the report of the case, *supra.* Thereupon, the administrator filed the bill in this case, seeking to remove the settlement of the estate into the Chancery Court, and to establish an equitable defense against the allowance of the claim, on the grounds shown by the following allegations:

"Said Thomas E. Winston, some time before his death, turned the said purchase over to said John A. Steele, one of his sureties on said notes, who undertook and agreed to pay the purchase-money for said lands, and to take the lands; and he went into possession of the same. After this, said Steele and Peet became bankrupt, and totally insolvent, and

unable to pay anything on said notes"; and Winston's estate
having been afterwards declared insolvent, on the 18th April,
1872, as above stated, "all the makers of said notes became
and were totally insolvent and unable to pay." "While said
Ligon was such administrator of said Walker's estate, he
placed said notes in the hands of William Cooper, esq., prac-
ticing attorney in said county, for collection,. management,
compromise, or adjustment, as said Cooper might deem best;
for which said notes, said Cooper gave said Ligon a receipt
in the name of his firm, a copy of which" is above set out.
"All the makers of said notes were at this time utterly insolv-
ent; and the vendor's lien yet existing, and being the only
prospect by which to collect said notes, said Cooper, as attor-
ney of said administrator, took the said land back from said
Steele, who had possession thereof, and agreed to give up the
notes to said Steele, as all that could be collected, and there-
after held said notes in his hands for said Steele, and as his
property; and this was done with the agreement of said Ligon,
who agreed with said Steele that he ratified, sanctioned, and
agreed to whatever said Cooper, his attorney, might do in the
premises in the settlement of the matter. The taking back
of said lands from Steele, in satisfaction of said notes, will
appear from a paper written by said Cooper to said Steele, in
March, 1869; a copy of which is herewith exhibited," being
a letter written by Cooper to Steele, dated March 3d, 1869,
and proposing to take back the land in full satisfaction of the
notes. "Thus said notes were fully satisfied and extinguished
in 1869, and held by said Cooper as Steele's property; and
said lands were given up by said Steele, and were afterwards
rented by him for one year, and $160 as rent of the same paid
by him to said Cooper as attorney of Ligon."

"On the day orator was appointed administrator *de bonis non*
of said Winston's estate, April 14, 1873, he examined · the
papers; records of said court, and claims filed against said
estate, for the purpose of filing objections to any claim it
might be necessary to object to, this being just four days
before the expiration of the twelve months after insolvency,
the period allowed by law for filing objections; and upon
such examination," he found the entry above copied, relative
to the claim filed by Ligon. "Orator then inquired of S. S.
Anderson, at that time the probate judge of said county, for
said attorney's receipt; and said Anderson then made a care-
ful examination for it in his office, in the presence of orator,
and stated to orator that it could not be found, and he did
not know where it was. Orator also, at the same time, made
search for it, and could not find said receipt, nor the said
notes, and could find nothing but the above memorandum.

At the same time, orator inquired of said Lindsay, the former administrator, who stated, that the claim had been settled— that the land was given up by said Steele, and the notes were given up to him ; and orator returned on · that day to Tuscumbia. On the next Monday, April 16, 1873, orator went with said Steele and Lindsay to the office of said Cooper, and Steele told *me* the same thing ; and upon inquiry of said Cooper, attorney for said Ligon, he told orator that he had taken back the land from said Steele, in satisfaction of said notes, and was to give them up to him ; that he held them for said Steele, and they were at his house, and he would bring them down and hand them to him ; that the whole matter was fully settled, and the notes satisfied. This was on the 16th April, 1873, in presence of *myself*, said R. B. Lindsay, John A. Steele, William Cooper, and L. B. Cooper : and said William Cooper then told orator, that he would not be further troubled about the claim—that it was settled, and would not be attempted to be enforced against said estate ; that he held the notes for Steele, and would give them up to him. All which information from said Cooper caused orator to do nothing further in said matter ; and orator charges and alleges that it was this information from said Cooper that caused him to do nothing further, and orator's action was thus entirely controlled by said Cooper, said Ligon's attorney in the matter." At the sale by Ligon, under the decree of the Probate Court, " of certain personal assets consisting of uncollected claims, on the 11th May, 1875, said James E. Moore purchased said notes for $50, when the amount due on them, with interest, exceeded $5,000, and said Moore notified orator of his said purchase, at which orator was greatly surprised, as he believed, and so charges, that said notes were fully satisfied long before said sale ; and orator charges that said notes were illegally and wrongfully sold, as they were fully satisfied, as orator had been informed by said Cooper, attorney for said Ligon , and said Ligon knew the same at time of said sale, as orator is informed and believes, and so charges the fact to be. After said notes came into said Moore's hands by purchase, when it was too late to file exceptions, orator again searched for said attorney's receipt, with said S. S. Anderson, and it could not be found in said Anderson's office ; and orator never saw it, until March 2d, 1877, the day of trial, when said Moore, or his attorney, placed it on the table in said office."

On the filing of the bill, a temporary injunction was granted by the chancellor. The defendant, without answering, filed a demurrer to the bill for want of equity, specially assigning fourteen grounds of demurrer. The chancellor overruled the

demurrer, and held that the bill contained equity; and his decree overruling the demurrer, from which the. appeal is taken, is here assigned as error.

J. B. MOORE, and D. P. LEWIS, for appellant.—All objections to the validity or justice of claims filed against an insolvent estate, whether on legal or equitable grounds, must be filed within the period prescribed by the statute; and if no objections are filed within the prescribed period, none can afterwards be interposed, at least on grounds which existed before the expiration of that period : the validity and justice of the claim are then conclusively established, as by a judicial decree, and the owner has a clear right to have it allowed. *Thames v. Herbert*, 61 Ala. 344 ; *Thornton v. Moore*, 61 Ala. 251 ; 20 Ala. 772 ; 33 Ala. 457. This is the condition of the appellant's claim, and its allowance can not be disputed, on grounds which might have been made available by objections duly filed in the Probate Court, unless the complainant can establish facts on which he could enjoin the collection of a judgment at law, on account of defenses which were available at law, but which were not presented in that court. In such cases, the complainant is required to show accident, mistake, or fraud on the part of his adversary, and to negative *laches* on his own part.—*Allman v. Owen*, 31 Ala. 171, and authorities cited in 1st Brickell's Digest, 666, § 376. There is no allegation in the bill which establishes fraud, accident, or mistake. The administrator of the insolvent estate was not bound by the representations of his attorney, whose agency had long ceased; and it is not even alleged that he had knowledge of such representations. If the complainant chose to rely on these representations, instead of consulting the administrator himself, he was guilty of legal negligence. On the statements of the bill, he had four days within which to file objections to the claim ; and he seems to have spent them industriously, in search of information from every body, except the one person who could have given it, and on whose statements he would have been justified in acting. Nor does he give any excuse for the failure of his predecessor, during the preceding three months, to file objections to the claim. The bill is wanting in equity, and the demurrer should have been sustained.

L. B. THORNTON, *pro se*, with W. COOPER, and THOS. H. WATTS, *contra*.—The administrator had authority to settle the notes by compromise.—Code, § 2505 ; *Baldwin v. Hatchett*, 56 Ala. 461 ; *Waring v. Lewis*, 53 Ala. 615 ; *Jones v. Dyer*, 16 Ala. 221 ; *Jones v. Blalock*, 31 Ala. 180 ; *Woolfork v. Sullivan*, 23 Ala. 448 ; *Shelton v. Carpenter*, 60 Ala. 200. The notes

[Moore v. Winston's Adm'r.]

being thus satisfied and discharged, they never were a valid claim against the estate. The complainant attempted to defend against their allowance in the Probate Court, but his defense was not successful.—*Thornton v. Moore*, 61 Ala. 251. He is, then, entitled to set up the defense in equity, unless he has been guilty of negligence in presenting his defense, or of *laches* in invoking the interposition of equity. The bill affirmatively shows diligence in seeking for information, during the short period allowed him; and that his failure to file objections to the claim was caused by the representations of the administrator's attorney, on which he had a right to rely, and the truth of which· is not controverted.—*Mock v. Steele*, 34 Ala. 198. The facts stated bring the case within the rule established by the following authorities: *Waters v. Creagh*, 4 S..& P. 410; *Lee v. Baird*, 4 H. & Munf. 427; *Brooks v. Whitson*, 7 Sm. & Mar. 513; *Humphrey v. Bartee*, 10 Sm. & Mar. 282; *Bibb v. Hitchcock*, 49 Ala. 468. The jurisdiction of equity, over the settlement of estates of deceased persons, may always be invoked, when the powers of the Probate Court are not adequate to afford full relief.—*Gayle v. Singleton*, 1 Stew. 566; *Cherry v. Belcher*, 5 Stew. & P. 133; *Scott v. Abercrombie*, 14 Ala. 270; *Leavens v. Butler*, 8 Porter, 381; *Dement v. Boggess*, 13 Ala. 140; *Blakey v. Blakey*, 9 Ala. 391; *Hunley v. Hunley*, 15 Ala. 91; *Gould v. Hayes*, 19 Ala. 438; *Stewart v. Stewart*, 31 Ala. 207; *Sellers v. Sellers*, 35 Ala. 235; *McNeill v. McNeill*, 36 Ala. 109; *Moore v. Leseuer*, 33 Ala. 237.

STONE, J.—The Probate Court is a court of law, not a court of chancery; and it has been many times affirmed in this court, that that court does not possess chancery powers. 1 Brick. Dig. 440, §§ 182 to 189; *Ib*. 647, §§ 120, 123. In the settlement of insolvent estates, that court is possessed of a speedy, complete, and relatively inexpensive jurisdiction, which is exclusive, unless satisfactory reasons exist and are shown why that court, by reason of·its want of equitable jurisdiction, can not administer equitable relief. It should be a clear and strong case to justify the transfer of the settlement of an insolvent estate to the Chancery Court. Still, there may be cases which would justify it.—*Hemphill v. Moody*, 64 Ala. 468; *Thames v. Herbert*, 61 Ala. 340, 344.

The present record presents the case of a pending settlement of an insolvent estate in the Probate Court. Moore became the owner, by purchase, of certain claims against the insolvent estate, which had been filed by Ligon as the administrator of Walker. These claims were filed within nine months after the declaration of the insolvency, and no exceptions were filed to their allowance within the twelve months

allowed by the statute. The defense set up against the allow-
ance of these claims was payment, or accord and satisfaction,
made by Steele, a co-maker of the notes, long before the
report of insolvency; even before the death of Winston, the
insolvent intestate. This defense against the allowance of
these claims was attempted to be made in the Probate Court,
and the case was brought here for revision.—*Thornton v.
Moore*, 61 Ala. 347. We held the filing was sufficient, and
that the attempted defense was unavailing. We said: "The
objection to the claims, in the form of a plea presented by
the appellant, was not filed within twelve months after the
declaration of insolvency, and the matter of objection existed
when the claims were filed. This plea was stricken from the
files, on the motion of the appellee, and we think properly."
We had previously said in the same case: "The allowance of
a claim, duly filed against an insolvent estate, is a right the
statute secures to the creditor, unless objections, directed to
its merits, are filed within twelve months after the declara-
tion of insolvency. As to all matters of objection addressed
to the validity or justness of the claim, which exist at the
expiration of the period prescribed for filing objections, this
is the effect of the statute. But, if matters subsequently
occur, which are a valid bar to the demand, or which deprive
the creditor of all right in equity and good conscience to
share in the distribution of the assets, the statute does not
preclude their introduction, and they may be shown at any
time before a final decree is rendered declaring the amount
of the claim, and the ratable proportion of the assets to which
the claimant is entitled."

In *Thames v. Herbert*, 61 Ala. 340, we said : "The statute
requires that, if no opposition to a claim filed is made by the
administrator, or by any other creditor, within twelve months
after the declaration of insolvency, by filing objections thereto
in writing, the claim must be allowed.—Code of 1876, §§ 2574-5.
The allowance of the claim, in the absence of objection within
the prescribed time, is a right of the creditor secured by the
statute." We said, also, in that case: "The same policy
which demands that, within a particular period, the claims
should be filed, requires that there should be a period, within
which the contestation of their correctness should be made."
In *Randle v. Carter*, 62 Ala. 95, 104, this court said: "The
ascertainment of the validity and amount of the demand of a
creditor, in the course of proceedings in insolvency in the
Court of Probate, has all the attributes of a judgment *in per-
sonam* against the personal representative, obtained in the
regular course of a suit at common law by a creditor."

The result of the foregoing clear principles of law is, that

although the defendant below, appellant here, had not, after the reversal here, by a decree of the Probate Court, established the validity and amount of his claim against the insolvent estate, and hence can not be said to have reduced his claim to judgment, yet its condition was such that its validity and amount stood proved in the Probate Court, and the administrator had lost all opportunity to defend against it, on the only ground of defense he had. This, by an inexorable mandate of the statute. The claim of appellant, then, stands on as high grounds as a judgment at law, and can be assailed only on the principles which obtain in attempts in equity to get rid of judgments at law.

The claims in controversy in this suit were placed by Ligon, as administrator of Walker, in the hands of Mr. Cooper as attorney, with authority to collect or arrange. The notes were signed by three persons, each of whom had become insolvent, and two of them were adjudicated bankrupts. Steele, on whom the duty of paying the notes in the first instance rested, made an arrangement with Mr. Cooper, by which he surrendered the lands, in the purchase of which the notes were given, in full discharge of the notes, and it was agreed that the notes should be surrendered to Steele, but they never were. These constitute the claim in controversy in the present suit. Long after the adjustment between Steele and Mr. Cooper, mentioned above, Ligon filed the claim as a charge against Winston's insolvent estate. We feel authorized to assume he did this personally, first, because Mr. Cooper's receipt for the notes is made the basis of the filing, and not the notes themselves; and, second, because the bill avers that Ligon filed the claims, and does not connect Mr. Cooper with it in any way. It is not made the duty of an attorney, who has a claim for collection, to file it as a claim against the estate of the debtor, afterwards declared insolvent.—*Stubbs v. Beene*, 37 Ala. 637.

It is contended for appellee that the assurances of Mr. Cooper, given to Thornton, the administrator, relieve him from all imputation of neglect, in failing to file exceptions to the allowance of this claim. *Mock v. Steele*, 34 Ala. 198, is relied on in support of this position. The cases are entirely dissimilar. That was not the case of a settlement of an insolvent estate between the administrator and the creditors. True, the estate had been declared insolvent, and claims had been filed against it as such. But, when the settlement came to be made, the creditors had been paid in full, and a surplus left for distribution. When the final settlement and distribution took place, the distributees proposed to except to a credit Steele claimed for a debt he had allowed and paid,

and upon a representation made by Steele, they allowed the claim to pass without objection. The distributees subsequently filed a bill against Steele, to recover from him this sum. The bill charged that Steele, " upon his settlement as administrator, for the purpose of inducing the complainants not to object to the allowance of the credit, represented the correctness of the credit, and stated circumstances out of which it grew, plainly demonstrating its correctness; that the complainants, who were ignorant upon the subject, upon those representations, forbore to object; that the contrary of the representations was true to such an extent, as to destroy the right to the credit, and that the credit was allowed." On appeal, this court held the bill contained equity. It will be observed that, in the case of *Mock v. Steele*, the false representation charged was made by Steele himself. In the present case, the representation and assurance on which the complainant alleges he relied, when he abstained from filing ·exceptions to the claim, were made and given by Mr. Cooper. Neither Ligon, the administrator, nor Moore, the defendant, is charged to have been present, or to have had anything to do with it. It is not even charged in the bill that Mr. Cooper as attorney, or otherwise, had any agency in filing the claim against the insolvent estate. On the contrary, as we have shown above, this service was performed by Ligon himself. When the compromise and adjustment were concluded between Steele and Mr. Cooper, his services under that retainer were evidently completed, and nothing remained but for him to turn over to his client the fruits of his professional skill. As further demonstration of the correctness of these views, Mr. Cooper is one of the counsel for Thornton in this suit. No one, looking at the facts, would question the propriety of his thus appearing, because he was in no way connected with the filing of this claim.

The present case, then, is the familiar one of an appeal to the Court of Chancery, to be relieved from the consequences of a failure to make a valid legal defense. To come within the rule, the party complaining must show, not only that he had a valid defense, but that he was prevented from making it by the fraud of the opposite party, or by mistake or accident, unmixed with negligence on his part. The party seeking relief must negative all imputation of negligence. 1 Brick. Dig. 643, §§ 60, *et seq.; Ib.* 666, § 376; *Weakly v. Gurley*, 60 Ala. 399; *Bowden v. Perdue*, 59 Ala. 409. The bill in the ·present case falls very far short of the rule. *Gamble v. Jordan*, 54 Ala. 432.

We are aware that the rule we invoke works hardly in this case. It is better, however, to maintain a sound rule in its

[Jones v. Pullen.]

integrity—one which has withstood the scrutiny and assaults of ages—than to destroy or weaken it to relieve a hard case. The present bill is without equity; and this court, proceeding to render the decree the chancellor should have rendered, doth order and decree that the injunction heretofore granted be, and the same is hereby dissolved. In the further progress of this cause, the chancellor will be governed by the principles declared above.

Reversed and remanded.