# Hardin *v.* Pulley.

*Bill in Equity by Infants, as Creditors of Insolvent Estate of Deceased Father, claiming Exemptions and Landlord's Lien on Crops.*

1. *Landlord's statutory lien; attaches when.*—The lien given by statute to a landlord, or his assignee, on the crops grown on the leased premises, for the rent of the current year (Code, § .3467), only attaches when the relation of landlord and tenant exists between the parties.

2. *Landlord and tenant; when relation exists.*—While the relation of landlord and tenant may be created by express contract, or by the conduct of the parties towards each other, it will not be inferred from the mere fact of occupation only, when the relative position of the parties to each other, in the particular case, can be referred to any other distinct cause.

3. *Same; as between infant devisees and paternal trustee.*— Where lands are devised to infant children, their father being appointed executor and trustee, with power to manage and control the property for them; whatever may be his liability to them, in a proper proceeding, for rents and profits, the relation of landlord and tenant does not exist between them, and they have no statutory lien on the crops raised by him on the lands, and received and sold by his administrator.

4. *Laches of infant, or guardian.*—As a general rule, *laches* will not be imputed to an infant, and his rights are not waived by his failure to assert them promptly; but there are cases in which his rights may be

[Hardin v. Pulley.]

lost by the failure of his guardian to assert them, leaving him only the personal liability of the guardian for indemnity.

5. *Exemptions of personalty to decedent's family; when and how made.* Although the statute contemplates that all personal property, not specifically bequeathed, shall be included in the administrator's inventory, and that a selection of exemptions may be made from the property so inventoried; yet a selection may be made from property not included in the inventory, and even before an inventory is filed.

6. *Same.*—Where an infant's guardian selected for him, as exempt, all the personal property included in the inventory, which was appraised at $400; and the administrator afterwards received and sold other personal property, accounting for the proceeds, after the estate had been declared insolvent, on final settlement of his accounts as administrator; on which settlement the infant was represented by a guardian *ad litem*, and no additional claim of exemptions was made; the surety on the administrator's official bond is not liable to the infant for the loss of any additional exemptions to which he might have been entitled.

7. *Insolvent estate; removal of settlement into equity.*—To justify the removal of the settlement of an insolvent estate into equity, requires a clear and strong case—a case requiring relief which the Probate Court, on account of its want of equitable jurisdiction, can not grant.

APPEAL from the Chancery Court of Madison.

Heard before the Hon. S. K. McSPADDEN.

The bill in this case was filed on the 22d August, 1885, by Luty W. and Henry S. Hardin, infant children of Benjamin L. and Anne E. Hardin, deceased, suing by their next friend, against Robert L. Pulley, as the surety on the official bond of Robert Nance, deceased, as the administrator of said Benjamin L. Hardin's estate ; and sought relief as follows : 1st, to charge said Pulley, as surety, with the amount of exemptions of personal property belonging to the estate of said Benjamin L. Hardin, to which the complainants claimed to be entitled as his infant children, and of which they were deprived, as they alleged, by the failure of the administrator to include said property in his inventory ; 2d, to enforce a claim of $300, for the rent of certain lands belonging to the complainants, which where cultivated by the said Benjamin L. Hardin during the year 1879, in which he died, and for which they claimed a landlord's lien on the crops received and sold by the administrator ; and, 3d, for other and further relief, under the general prayer.

The facts of the case, as alleged in the bill, were these : Mrs. Anne E. Hardin, the complainants' mother, died in December, 1877, having executed her last will and testament, which was duly admitted to probate soon after her death. By her said will, the testatrix devised and bequeathed all of her property, real and personal, to the complainants ; and further added, " I desire that my dear husband, Benj. L. Hardin, shall manage and control the property for my children, without giving bond." Letters testamentary were granted to said Benjamin

L. Hardin on the 16th February, 1878, and he took possession of the lands and other property, cultivating the lands during the years 1878 and 1879; and there was a crop of cotton growing on the lands at the time of his death in September, 1879. Letters of administration on his estate were granted, soon after his death, to Robert Nance, who thereupon gave bond, with Robert L. Pulley and M. D. Nance as his sureties. Appraisers of the estate were at the same time appointed, who returned an inventory and appraisement of the property aggregating $413.28; which was thereupon claimed for the complainants, by their guardian, as exempt, the claim allowed, and the administrator ordered to deliver the property to their guardian. The administrator gathered and sold the crops, the proceeds of sale aggregating about $1,670; and the guardian of the complainants filed with him on the 13th November, 1879, an account against the estate for $300 on account of the rent of their lands during the year 1879, asserting also a landlord's lien on the crops for the amount. The administrator refused to pay this claim, and disbursed the money in the payment of debts and expenses of administration. On the 15th June, 1880, on the report of the administrator, the estate of said Benj. L. was duly declared insolvent; and the complainants' account for rent was regularly filed, on the 24th July, 1880, as a claim against the insolvent estate. On the 19th July, 1880, the administrator made a final settlement of his accounts and vouchers; charging himself with amount of inventory ($413.28), pro ceeds of sale of crops ($1,696), and sales of other personal property ($203); and claiming credits to the amount of $1,606.44 for moneys paid out, among which was an item for $500, "cash paid Darwin & Pulley on crop lien," the administrator himself being a member of the firm. By the account, as stated and allowed, a balance of $89.55 was found to be in the administrator's hands, and he was continued in office as the administrator of the insolvent estate. Robert Nance died in 1881, intestate, and never having made a settlement of his administration on said Hardin's estate; and administration *de bonis non* of said insolvent estate was afterwards committed to R. E. Spragins, who made a final settlement. No administration was ever granted on the estate of Robert Nance, and the bill alleged that M. D. Nance owned no property subject to execution. The complainants claimed, on these facts as alleged, that said Pulley was, as the surety on the official bond of Nance as administrator, liable to them for the balance of exemptions to which they were entitled ($586.72), and which they had lost by the failure of the administrator to include in his inventory the crops and other property which he received and afterwards sold, and also for the amount of their claim for rent, $300.

[Hardin v. Pulley.]

The defendant demurred to the bill, on account of the non-joinder of necessary parties, and because the complainants' remedy, if any they had, was at law, and for want of equity; and he pleaded in bar the declaration of insolvency of said Hardin's estate, and the subsequent final settlement. The chancellor sustained the demurrers and the pleas, and dismissed the bill; and his decree is now assigned as error.

D. D. Shelby, and R. W. Walker, for appellants.—(1.) On the facts alleged, the Probate Court could not have made a settlement of Nance's administration, which would have been binding on Pulley as his surety.—*Jenkins v. Gray,* 16 Ala. 100; *Gray v. Jenkins,* 24 Ala. 516; *Stallworth v. Farnham,* 64 Ala. 259. The complainants, as distributees of Hardin's estate, had a right to proceed against the administrator's surety; and the inadequacy of the powers of the Probate Court authorized a resort to equity.—*Moore v. Armstrong,* 9 Porter, 697; *Clark v. Eubank,* 65 Ala. 245; *Shackleford v. Bankhead,* 72 Ala. 476. That Pully was the only necessary party defendant, see *Frierson v. Travis,* 39 Ala. 150; *Fulgham v. Herstein,* 77 Ala. 476; Code, §§ 2905, 3754. (2.) The complainants are entitled to recover of said Pulley, as surety on the administration bond, the balance due on their claim of exemption, which was lost by the failure of the administrator to return an inventory of all the property. The selection of exempt property is required to be made "from the property described in the inventory."—Code, § 2825. No *laches* can be imputed to the probate judge or the guardian, to whom the statute commits the duty of protecting the rights of the infants; since they can not be presumed to have knowledge of any property not included in the inventory, and all that was included was claimed and allowed.—*Mitcham v. Moore,* 73 Ala. 542. The failure of the administrator to return a complete inventory was a breach of his official bond, for which there is no remedy at law.—*Edwards v. Gibbs,* 11 Ala. 292; Code, § 2365. *Laches* will not be imputed to an infant, under the circumstances here shown. Tyler on Infancy, §§ 109–19; 1 Dess. S. C. 201; 1 Paige, 479; *Loeb & Weil v. Richardson,* 74 Ala. 314. That the administrator can not defeat the right of exemption by converting the assets into money, and paying it out prematurely, as he did in this case, see *Little v. McPherson,* 76 Ala. 556. (3.) The existence of the relation of landlord and tenant is a legal conclusion from the occupation of one person's land by another. Taylor's Land. & T. 14. When an administrator keeps possession of land, not for the purposes of administration, the devisee may charge him with rents as his landlord.—*Hinson v. Williamson,* 74 Ala. 197; *Steele v. Knox,* 10 Ala. 608. When

[Hardin v. Pulley.]

the relation of landlord and tenant exists, the statutory lien attaches.

F. P. WARD, with whom was R. C. BRICKELL, *contra.*—(1.) The relation of landlord and tenant does not exist between a guardian and his ward, nor between a trustee and his *cestui que trust*, although there is a liability to account for the use and occupation of lands; and where that relation does not exist, there is no statutory lien for rent. (2.) If the complainants had a lien on the crops for rents, their only remedy was an action on the case against Nance.—*Hussey v. Peebles*, 53 Ala. 432. But this was the individual liability of the administrator, and it could not be enforced against his intestate's estate. *Humes v. Fariss*, 48 Ala. 612. (3.) The right of exemption, except as to the $413 claimed and allowed, was lost, or, rather, was never perfected; and if the complainants have any remedy for the loss, it is against their guardian, who failed to protect their rights.—63 Ala. 280; 70 Ala. 381; 73 Ala. 542. (4.) If the complainants have a claim against Nance individually, the surety on his administration bond is not liable for it. If their claims are against Hardin's estate, they must fail, because his administrator is not made a party; and because the estate has been declared insolvent, and has been finally settled. (5.) The Probate Court has jurisdiction of the insolvent estate of Hardin, and no reason is shown for removing it into equity. 56 Ala. 118; 66 Ala. 296.

CLOPTON, J.—The statute creates a lien in favor of the landlord, or his assignee, on the crops grown on the rented premises, for the rent of the current year. The lien does not arise from a contract express or implied, but is attached as an incident to the relation of landlord and tenant. Unless such relation, which is the subject of contract, exists, there is nothing to which the lien can attach, and, in consequence, there is no lien.—*Scaife v. Stovall*, 67 Ala. 237. In respect to the right of complainants to recover their alleged demand for rent, the material question is, whether they and their father, Benj. L. Hardin, sustained to each other the relation of landlord and tenant. If this question be held adversely to complainants, it renders unnecessary a consideration of the liability of defendant as surety on the official bond of the administrator, for his willful and tortious acts, complained of in this respect.

The bill alleges that certain lands, described therein, were devised to complainants by the will of their mother, which was duly admitted to probate, of which Benjamin Hardin was appointed and qualified executor, in February, 1878; that he was in possession of the lands at the time of the death of their mother, as her husband, and thereafter held the same for com-

25

plainants as such devisees, until his death, which occurred September 1, 1879 ; and raised thereon a crop of cotton, which was removed and sold by his administrator. By the will, Benjamin Hardin was empowered to manage and control the property devised and bequeathed for the use and benefit of complainants, without giving bond.

The relation of landlord and tenant is founded on contract, which may be express, or implied from the conduct of the parties towards each other in respect to the subject-matter. But the relation will not "be inferred from occupation, if the relative position of the parties to each other can, under the circumstances of the case, be referred to any other distinct cause ;" and does not exist, where the lands are occupied by a person holding the position and relation of trustee.—Taylor's L. & T., § 44. The allegation of the bill, that Benjamin Hardin held the lands for complainants, and the provisions of the will, make clear that he was occupying, managing, and controlling the lands in the capacity of either executor or trustee. The relative position of the parties may, under the allegations of the bill, be referred to the will and the power and authority conferred thereby. In such case, the relation of executor and devisees, or of trustee and *cestuis que trust*, subsists. The relation of landlord and tenant between a father, thus holding lands, and his minor children, will not be inferred.—*Russell v. Erwin*, 38 Ala. 44. The father may be largely indebted to them for rents and profits, for which he could have been held to account in a proper proceeding, and which may constitute a claim against his estate. The bill admits that the cotton was the property of their father, and only claims rent. For rent the complainants had no lien on the cotton removed and sold by the administrator, inasmuch as the necessary relation did not exist ; whatever may have been their rights, if they or their guardian had attempted to hold their father to account as trustee, and claimed the entire cotton as the profits of lands held by him in trust for them.

The bill further seeks to hold the defendant liable, as surety on the bond of the administrator, for the amount of exemption of personal property, to which they were entitled, and of which, as complainants claim, they were deprived by the conduct of the administrator. The right to the exemption vested immediately on the death of their father, and is absolute and unqualified ; but no title vests to any specific property, until it is selected, and set apart from the balance of the estate. The right to the exemption is lost, or waived, by a failure to select in due time. We have held, that the claim must be asserted before the property is sold under an order of the court, or before it is subjected to administration for the payment of

[Hardin v. Pulley.]

debts, or for distribution. So long as there remains any personal property unsold or unadministered, the selection may be made; but, after the property is sold, there is no subject-matter to which the exemption can attach.—*Mitchum v. Moore*, 73 Ala. 542; *Little v. McPherson*, 76 Ala. 552; *Henderson v. Tucker*, 70 Ala. 381.

In the present case, the guardian of complainants, in September, 1879, selected, as exempt for them, the personal property which had been then appraised, amounting in value to about four hundred dollars; which selection was permitted by the administrator. Other personal property of the estate was sold in January, 1880. The estate was declared insolvent in June, 1880; and in July thereafter, the administrator made a settlement of his accounts as such. On this settlement, the administrator accounted for the sales of the personal property, including the cotton. The complainants were represented by a guardian *ad litem*. No person having been nominated by the creditors, the former administrator was continued, and acted as such until his death in 1881. No claim for any further exemption was ever asserted, until the present bill was filed, in August, 1885; and the bill does not allege that there was any personal property of the estate, other than that allowed as exempt, and what was accounted for on the settlement.

As a general rule, *laches* will not be imputed to an infant, and his rights are not waived by a failure to assert them promptly; though they may, under some circumstances, be lost by the failure of their guardian, to whose personal liability they must resort, in such cases, for indemnity. The statute does not contemplate that the infants shall make the selection. Their guardian is the person designated and authorized, and on him the duty is imposed. The excuse given for not selecting property as exempt, in addition to that already allowed, is, that the administrator did not return an inventory of the other personal property from which they could select; and for the loss sustained by this breach of duty, they claim that his surety is liable. The theory of the excuse seems to be, that a selection is dependent on the property being inventoried. It is true, the statute contemplates that all the personal property, except the articles specially exempted, may be inventoried; and that the selection may be made from the property described in the inventory. But an inventory of the property is not essential to a selection, either by the guardian, or by persons appointed by the judge. A selection may be made before administration of the estate is granted; the office of the selection being to individualize the property.—*Mitchum v. Moore, supra.* And the judge of probate can appoint disinterested persons to make a selection, before the return of an inventory. If a selec-

tion could not have been made until an inventory was returned, there would· be plausible ground on which to rest the excuse. If an inventory was necessary to inform the guardian of ·the personal property, and enable him to make a selection intelligently, the statute armed him with power to compel an inventory, or remove the administrator; and in a proper case, a court of equity, if the powers of the Probate Court were inadequate, would interpose, and make the right to select available. *Loeb v. Richardson*, 74 Ala. 311. There is no allegation in the bill, that the guardian was not informed of the personal property of the estate; and in the absence of such allegation, the inference must be indulged, that he knew of the cotton, which had been gathered and removed from the lands of the complainants by the administrator, and of the other personal property. There was no legal impediment to the exercise of the right of selection, or to an appointment by the judge of probate.

In *Little v. McPherson*, 76 Ala. 552, where we said the personal representative can not defeat the right to exemption by converting the choses in action into money, or using the assets in payment of debts before the expiration of the time allowed creditors to present their claims, the estate had not been declared insolvent, and the property selected remained *in specie*. Where the estate is declared insolvent, the administrator is required by statute to make a settlement of his accounts on a day named, not less than thirty, nor more than sixty days, from the declaration of insolvency. To permit such settlement to be made without asserting a claim of exemption, may be a waiver as to the administered assets. There is a difference between a defeat of the right of exemption by unauthorized or unrequired acts of the administrator, and by the failure of those entitled to assert the claim. No active duty is imposed upon the administrator to have a selection made. He may proceed with the due and legal administration of the estate, without delaying for a selection. His duty is passive—to permit a selection of property described in the inventory. Until there has been an effort or proposition to select, he is under no responsibility to those entitled, but who have failed to assert the right. To hold a surety liable on the allegations of the bill, for the amount of the exemption, would require him to compensate complainants for a loss sustained by the inaction of their guardian, and by the failure of the judge of probate to appoint disinterested persons to make a selection. If improper payments were made by the administrator, they should have been contested on his settlement. In the absence of fraud or collusion, or an undue advantage, the settlement is conclusive. We do not decide that the right to exemption

is lost or waived, if there be any subject-matter to which it can attach. What we do decide is, that the surety is exonerated from liability by reason of the guardian having suffered the administrator to sell the personal property, to have the estate declared insolvent, make a settlement of his accounts, and continue to act until his death, without any effort to make a selection, a partial selection having already been made.

It is urged that the bill should be sustained, for the purpose of removing the administration into the Chancery Court. If such be the object of the bill, the administrator *de bonis non* of Hardin's estate is a necessary party. As the sufficiency of the bill for the purpose of removing the administration was not made before, nor passed on by the chancellor, a consideration of it would be premature. The chancellor did not dismiss the bill, but gave leave to amend. It may possibly be amended, so as to bring it within the rule; which requires a clear and strong case to justify the removal of the settlement of an insolvent estate into the Chancery Court—a case requiring equitable relief, which the Probate Court can not administer, by reason of want of equitable jurisdiction.—*Moore v. Winston,* 66 Ala. 296; *Shackelford v. Bankhead,* 72 Ala. 476.

Affirmed.