GEORGE CAREY and JAMES MONTROSS, executors of the will
of James Carey, deceased,

*v.*

JENNINGS A. MONROE and LAURA J. FRANCISCO, executor
and executrix of the will of Sarah Ann Carey, deceased.

1. The "family" of a decedent does not take title to the reservation which
is contemplated in the fifty-second section of the Orphans Court act (*Rev. p.*
*762*) until selection shall be made as the statute requires.

2. Where, by his will, a decedent has directed the payment of his debts and
has bequeathed and devised the entire remainder of his estate, a reservation
under the fifty-second section of the Orphans Court act will conflict with the
will, and hence cannot be had.

3. An exception to the account of executors must make objection to the jus-
ness of the account in charge or discharge, and not merely seek the recovery
of a demand from the estate.

On appeal from a decree of the Passaic county orphans court.

James Carey, while residing with his wife in Passaic county,
on the 28th of April, 1892, died testate. By his will, which
was dated three days before his death, he directed his executors
to pay his debts and funeral expenses, gave to two grandchildren
each $50, devised and bequeathed the remainder of his estate,
real and personal, to his eight children in equal shares, and ap-
pointed executors with power to sell his real estate. No provi-
sion for the wife was made by the will, nor was she mentioned
in it. The wife, Sarah Ann Carey, survived Mr. Carey six
days, dying on the 4th of May, 1892, leaving a will which dis-
poses of her estate. On the 13th of May, in the same year, the
will of Mr. Carey was admitted to probate by the surrogate of
the county of Passaic, and on the same day an inventory and
appraisement of his personal estate, made by appraisers who
were not appointed by the surrogate, was proved before the sur-
rogate. On May 27th, in the same year, the will of Sarah Ann
Carey was proved, and later the executors thereof inventoried

her personal estate, including therein $200 which they claim is due to them from the estate of James Carey in virtue of the statute (*Rev. p. 762 § 52*), the payment of which they subsequently demanded from the executors of the will of James Carey. The money so demanded was not paid. Later the executors of the will of James Carey filed their account, in which they asked credit for debts of the decedent and legacies bequeathed by his will which they had paid, and also for the payment of moneys in partial distribution of the remainder of his estate according to the terms of his will, and exhibited a balance exceeding $200 for further distribution under the will, but in which account they did not make any reference to the $200 demanded by the executors of Mrs. Carey. To that account the executors of Mrs. Carey's estate excepted upon the ground that the accountants had refused to reserve goods and chattels, moneys and effects of the estate of James Carey, to the value of $200, for the use of their testatrix, and had refused to pay that sum to them after her decease.

The orphans court sustained the exception and decreed that $200 be paid from the estate of James Carey to the executors of his wife's will. From this decree the appeal considered is taken.

*Mr. John W. Griggs*, for the appellants.

*Mr. Eugene Emley*, for the respondents.

THE ORDINARY.

The appeal presents two questions—*first*, whether by exception, like that which is now considered, to the account of executors or administrators, the statutory reservation for the family of a decedent may be enforced, and, if so, *second*, whether Mrs. Carey took a title or right to $200 of her husband's estate which survives to her representatives.

The statute (*Rev. p. 762 § 52*) is a growth from the statutes respecting executions, in pursuance of a legislative policy that neither a living debtor with a family, nor the family of a deceased debtor, resident with him in this state at his death, shall, with-

out his express assent, be liable to be wholly impoverished by the payment of his debts. It provides that the wearing apparel of any person who shall die, leaving a family resident in this state, and goods and chattels, moneys and effects of his estate to the value of $200, shall be reserved to and for the use of his family against all creditors and before any distribution or other disposition thereof. It makes it the duty of the executor or administrator to apply to the surrogate, who is to appoint two discreet and judicious persons not interested in the estate and not of kin to the widow or children, who are to be sworn to truly value the property, and who shall proceed to inventory and appraise all the goods and chattels, moneys and effects of which the decedent died possessed. It provides also, following the language of the act, that

"the widow of the deceased, or his executor or administrator, may select from such inventory, goods and chattels, moneys and effects to the value of two hundred dollars, and annex to said inventory a list thereof; and the goods and chattels, moneys and effects so selected shall thereupon become the property of the said family and remain for their use."

The next section of the statute defines those who shall constitute the family entitled to the benefit of section 52, to be the widow and child or children, who shall reside in the family of the person dying at his death, and adds that nothing in section 52 "shall be permitted to conflict with the provisions of any last will."

It is observed that the apparel of the decedent and the $200 in value of his personal estate are to be reserved against creditors and prior to any distribution or other disposition of the estate, if the reservation does not conflict with the provisions of his will. The statute contemplates that this reservation for the family, if due, shall be the first disposition of any part of the assets of the estate. The object of an executor's or administrator's accounting is to determine the amount of money with which he is chargeable. That amount is the balance in his hands after all proper charges shall be made against him, and he shall be credited with all lawful allowances. The office of an exception

to an account is to question the justness of the account in failure to charge or in the discharge sought. The requirement of the statute, that the executor shall make reservation for the family against creditors and before any distribution or disposition of the estate, while uncomplied with, perhaps disentitles him to any discharge from his receipts because of payment to creditors or distribution until that duty shall be performed, and it may be, and, I think, is true, that the family, therefore, is interested in the estate and settlement of the account to the extent at least of this right, and, for the absolute security of the reservation, should be permitted to except to any allowance being made to the accountant for payments to creditors or for distribution or other disposition of the estate until the reservation shall be made. But the exception considered does not object to the account in any particular. It does not either insist upon charge or object to the discharge which the accountants seek. It merely objects that a duty remains unperformed and impliedly seeks to enforce performance of that duty through payment of money. Although called an exception to the account, it is in reality a demand that the executors may be required to do their duty by paying a sum of money to the exceptants. Any creditor, with equal propriety, might, by similar exception to the executors' account, demand the payment of his claim and seek to have its validity established. That the orphans court regarded it as a mere money demand is manifested by the decree appealed from, that the accountants pay money. I think that the exception, in the form in which it was presented, should not have been allowed.

But I think that I should not rest the reversal of the decree upon this ground alone. The merits of the main controversy between the parties may and should be settled. The provision of the fifty-second section of the statute is the establishment of a pure bounty of the law for the preservation of the immediate family of a decedent, presumably dependent upon him, from the distress of extreme poverty at his death. It has for its objects defined individuals whom it intends to assist or relieve personally. It does not purpose to augment the estate of those individuals for the benefit of others who may be entire strangers

to the decedent. In many cases the bounty is accorded at the expense of creditors who suffer from the insolvency of their debtor. It is apparent from its scheme and the detriment it may be to creditors, that while the courts should construe the statute with sufficient liberality to accomplish its charitable intent, they should not be too ready, in the absence of a clear manifestation in the law itself of a purpose to the contrary, to give it an interpretation which will tend to facilitate injustice to creditors for the benefit of others than the objects of the bounty. The statute considered, after provision for inventory, appraisement and selection for the family, concludes in this language: "And the goods and chattels, moneys or effects so selected *shall thereupon become* the property of said family and remain for their use." The plain import of such language, by force of the words " *shall thereupon become*," is that, upon the selection, that which shall be selected, not having theretofore been the property of the family, shall " become * * * thereupon " its property. Before the selection it, with the other personal estate, is the property of the personal representative of the decedent for the execution of his trust and therein primarily reserved for selection for the use of the family. Until the selection is made and title to that which is selected is thereby secured to the family, all that the family has is a personal right to take by selection which does not survive to personal representatives. It is, perhaps, otherwise as to the wearing apparel, which is not dependent upon the selection (*Mitcham* v. *Moore, 73 Ala. 542*), but with that I do not now deal.

In reaching this conclusion I have examined many of the adjudications of other states upon statutes having a similar general object. They, of course, vary with the terms of the statutes passed upon, many of which, without doubt, contemplate the absolute bestowal of the bounty at the death of the owner of the estate. I have not been referred to, nor have I found, a case upon the statute exactly like our own. The principal value I have derived from the cases is in the reasoning upon which their respective conclusions are based. From a class of them, dealing with statutes which require some action to ascertain the bounty,

such as an allowance by a court, an allotment by commissioners, a selection, and the like, I have been satisfied that in the interpretation of statutes giving this bounty to the family the courts, so far as the terms of the statutes will admit, should favor a construction which will extend the bestowal of the bounty only to and through the persons for whom it is intended. *Adams* v. *Adams, 10 Metc. 170; Cox* v. *Brown, 5 Ired. 194; Ex parte Dunn, 63 N. C. 137; Barnum* v. *Boughton, 55 Conn. 117; Tarbox* v. *Fisher, 50 Me. 236; Henderson* v. *Tucker, 70 Ala. 381; Mitcham* v. *Moore, supra; Harden* v. *Pulley, 79 Ala. 381.*

In the present case, before the decedent's will was proved and before an inventory, appraisement and selection could be made, the widow, who constituted the family, died. I do not think that the right she took at the death of her husband survived to her representatives.

Upon another ground I reach the same conclusion upon the merits of the controversy.

It is noticed that the will of James Carey disposes of his entire estate. It directs the payment of all his debts and thereby indicates that he did not mean that there should be a reservation against creditors. It gives two legacies and bequeaths and devises the entire remainder and residue of his estate to his eight children, who were not living with him when he died and were therefore not of his family within the meaning of section 52 of the statute. Thus the will undertakes to dispose of the whole estate. If $200 is to be paid to the representatives of his wife's estate, his will must, to that extent, be defeated. He had the right to disregard the bounty of the statute. The law which gives it life says that his will shall be supreme. The will leaves nothing undisposed of from which the bounty can be paid. Does there, under such circumstances, exist a conflict between the legislative bounty and the will such as the fifty-third section of the statute contemplates shall defeat the bounty? I at first thought that perhaps, in interpreting the provision of the fifty-third section, the word "conflict," taken in its sense of violent active collision, should induce the holding that the will must expressly override the bounty of the fifty-second section, but after

having regard to the whole statute I conceive the better opinion to be that such was not the legislative intent. I conclude that if the will disposes of the whole estate' the bounty is lost, the word "conflict" meaning that the will shall be supreme where the complete execution of its provisions does not admit, expressly or impliedly, of the bestowal of the bounty. See *Mulford* v. *Mulford, 15 Stew. Eq. 68, 73.*

I am of opinion that the decree appealed from should be reversed.