## ASKEW ET AL. *vs.* HOOPER, ADM'R, &C., ET AL.

[BILL IN EQUITY FOR RESCISSION OF CONTRACT ON GROUND OF FRAUD.]

1. *Statute of limitations, how applied in equity.*—The statute of limitations applicable to actions at law is not binding on the chancery court, in cases of exclusively equitable cognizance; but that court, besides refusing to interfere where there has been gross laches, or a long or unreasonable acquiescence in the assertion of adverse claims, often adopts, in cases to which the statute of limitations does not strictly apply, a period within which its aid must be sought, similar to that prescribed in analogous cases at law.

2. *Laches fatal to relief.*—A bill for the rescission of a contract of purchase, on the ground of the vendor's false representations, was filed thirteen or fourteen years after the discovery of the fraud, and, although it alleged that the complainant abandoned the land on the discovery of the fraud, showed no act on his part which would have precluded him from enforcing the specific execution of the contract, if a favorable fluctuation in the price of the land had made it his interest to do so; and the laches was held fatal to the relief, on demurrer for want of equity.

3. *Legal defence to note no ground of equitable jurisdiction.*—Where a note, given for the purchase money of town lots, at a place which was the contemplated terminus of a railroad then in process of construction, was made payable "when the first locomotive engine on the M. railroad should arrive" at the town, the fact that the railroad company was sold out, and the road completed by another company subsequently incorporated, is available (if at all) as a defense at law, and therefore constitutes no ground for a resort to equity.

APPEAL from the Chancery Court of Russell.
Heard before the Hon. JAMES B. CLARK.

L. E. PARSONS and JOHN A. LEWIS, for appellant.
HOOPER & DUNCAN, BELSER and SEMPLE, *contra.*

WALKER, J.—The decree of the chancellor, dismissing the bill filed by appellants, for want of equity, is assigned as error. The appellants purchased on 12th December, 1837, two lots in West Point, which purchase is evidenced by a bond for titles. For the purchase money they executed three notes, one of which was payable "when the first locomotive engine should arrive at West Point in Georgia, on the Montgomery railroad from Montgomery." One of the three notes has been paid, another has been paid in part, and the last named of the three notes is sued upon. The bill seeks to rescind the con-

tract for the purchase of the lots, and to enjoin the collection of the notes, and contains a prayer for other specific relief, which it is not necessary to notice. The rescission of the contract is claimed upon the ground, that the purchaser was induced by representations that the railroad from Montgomery to West Point would be completed in two or three years, which representations were not known to be true. The representations made were credited, and acted on, because some of the vendors, who made them, were stockholders, and some directors, in the railroad company. The complainants erected a warehouse on one of the lots. The bill was filed on the 28th March, 1854.

From this partial statement of the allegations of the bill, it will be perceived that there was a period of more than sixteen years, between the making of the contract of purchase and the commencement of this suit, and of at least thirteen or fourteen years between the time when (it was asserted) the railroad would be completed to West Point and the commencement of this suit. As this is a case of exclusively equitable jurisdiction, the statute of limitations, applicable to suits at law, was not binding on the chancery court in its decision. But courts of equity often refuse to grant relief, in cases to which the statute of limitations does not strictly apply, and adopt a period, in which their aid must be sought, similar to that prescribed in analogous suits at law. Besides, courts of chancery refuse to interfere, in many cases, "where there has been gross laches in prosecuting rights, or a long or unreasonable acquiescence in the assertion of adverse claims." "Nothing can call forth (the chancery) court into activity, but conscience, good faith, and reasonable diligence."—Gunn v. Brantley, 21 Ala. 644 ; Johnson v. Johnson, 5 Ala. 94 ; Kern v. Bonham, opinion at this term, by C. J. Goldthwaite; 2 Story's Equity Jurisprudence, 1520, notes ; Pintard v. Martin, 1 Sm. & Mar. Ch. R. 134.

If the equity claimed in the bill is assimilated to a suit for the recovery back of money paid, or for an action to recover damages for a deceit, or even an action for the recovery of land, the chancery court could grant no relief, because the period which elapsed, after the cause of action accrued, before suit brought, exceeds the period of limitation applica-

ble to either one of those actions. However, if it be conceded to the appellant, that the court of chancery cannot in this case adopt from analogy the period prescribed in the statute of limitations, the laches of the complainants, and their acquiescence for so long a time, must be fatal to the bill. In determining whether the complainants' case is vitiated by their laches, we have no fixed rule to guide us, but must look to the circumstances.

The representations of complainants' vendors were. to the effect, that the railroad would be completed to West Point in two or three years. The term limited in those representations for the completion of the road, expired in 1839 or 1840. The complainants must have then ascertained with certainty, that the representations were not true. Why did they postpone the suit from that time until 1854? It is alleged in the bill, that one of the complainants was never in *actual* possession of the lots, and that the other complainant has not been in *actual* possession since 1839 or 1840; that neither of them has exercised any act of ownership since 1840; and that "the said lots have been wholly abandoned by" both the complainants. At what time the entire abandonment took place does not appear; nor is it alleged in the bill that the complainants ever notified the vendors of their abandonment; or that the vendors knew of the abandonment; or that the bond for title was ever tendered to the obligors; or that an offer to rescind had ever been made. The complainants do not show that they had done any act, or spoken any word, up to the time when the suit was commenced, which would preclude them from claiming the land. They were, therefore, in a condition, at the commencement of this suit, to have coerced a specific performance of their purchase, if a favorable fluctuation in the price of real estate had made it their interest to do so. It would involve the grossest injustice, to permit purchasers to remain silent for so long a period of time, knowing all the facts upon which their right of suit depended, and with no obstacle in the way of the suit; and at the end of that time, confirm or rescind their purchase, as the rise or fall in the price of property might make it their interest to do. It would be equivalent to permitting them to cling to

the speculative advantages of a contract, and then to abandon it because the speculation was not realized.

The question is evidently designed to be raised, whether the event has happened upon which the note in suit was payable. Even though the makers of the note may be absolved from the payment of the note, because the Montgomery railroad was sold out, and a company subsequently incorporated was the instrument of completing the road and running a locomotive engine from West Point to Montgomery, that is a matter which is available as a defence to the note at law, and cannot support the jurisdiction of this-court.

The decree of the chancery court is affirmed, at the costs of the appellants.