# McMillan *et als. v.* Rushing *et als.*

*Bill in Equity by Devisees against Administrator de bonis non, for Recovery of Land sold by him, and for an Account.*

1. *Decree of insolvency; when not conclusive on heirs and distributees.* A decree of the Probate Court declaring an estate insolvent, and subsequent proceedings based on that decree, rendered and had prior to the enactment of the statute approved December 4, 1878 (Sess. Acts.1878–9, p. 69), are not conclusive on the heirs and distributees, legatees and devisees, who were not parties, and had no right to file objections to claims, nor to contest the administrator's accounts.

2. *Account; bill for, by legatees and devisees against administrator of estate declared and settled as insolvent; what necessary to be shown.*—To sustain a bill by legatees and devisees, against the administrator of an estate which has been declared and settled as insolvent, for an account of property specially devised and bequeathed to them, they must show that, on a proper accounting, after paying all the debts properly filed against the insolvent estate, assets will remain to which they are entitled.

3. *Administrator without interest cannot purchase at his own sale.* When an administrator has no interest in the estate which he represents, he cannot become, either by himself, or jointly with another person, the purchaser of lands sold by himself under a probate decree, but such sale is voidable at the election of the heirs or devisees seasonably expressed; and the confirmation of the sale by the Probate Court does not prevent the application of the equitable doctrine.

4. *Laches not imputed to infant; when election seasonably expressed.* As a general rule, *laches* will not be imputed to an infant; and where several children, seeking to set aside a purchase of lands by an administrator at his own sale, file their bill within two years after the eldest had attained his majority, their election is seasonably expressed.

5. *Who not purchasers for valuable consideration.*—Neither a voluntary donee, nor a grantee by quit claim only, is entitled to protection as a purchaser for valuable consideration; and a purchaser at a sale made by an administrator stands in no better condition.

6. *When not necessary to set aside order of sale.*—In setting aside a

[McMillan et als. v. Rushing et als.]

sale under a probate decree, where the administrator himself became the purchaser, it is not necessary or proper to set aside the order of sale, if regular; but the court may, if necessary, direct a new sale under it.

APPEAL from the Chancery Court of Sumpter.
Heard before the Hon. THOMAS COBBS.

The facts sufficiently appear in the opinion of the Court.

COOKE & LITTLE, for appellants.

GEO. G. LYON, A. G. SMITH, and W. L. BRAGG, contra.

CLOPTON, J.—The subject-matter of the suit is an account of the personal property which came to the possession of McPherson as administrator *de bonis non* with the will annexed of the estate of M. B. Taylor, and a recovery of the lands sold by him as such administrator, under a decree of the Probate Court; which personal and real property was bequeathed and devised to the children of D. M. Taylor, who were living at the time the will was made, and at the time it went into effect. The testator died in 1861, and D. M. Taylor was appointed and qualified as executor of his will, and acted as such until his death, in May, 1867. In July thereafter, McPherson was appointed administrator *de bonis non.* On his report, the estate was declared insolvent, in November, 1868 ; and succeeding the decree of insolvency, a final settlement of his past administration was made in March, 1869. The creditors not having nominated any person, he was continued administrator of the insolvent estate ; of which final settlement and distribution was made in March, 1870.

The proceedings in insolvency were instituted and conducted under the statutes constituting sections 2549 to 2589, inclusive, of the Code. Prior to the act of December 4, 1878 (Acts 1878–79, p. 69), the heirs, distributees, legatees, and devisees were not parties to such proceedings, and had no right to file objections to claims, nor to contest the account of the administrator. The decree of insolvency, under the statutes, was made on the report of the personal representative, without further proof, if no creditor contested ; and was intended to declare the *status*, or condition of the estate, as between the personal representative and the creditors, who were the only parties from the commencement of the proceedings to the final distribution to the creditors. These are the only persons to whom notice was required, who were barred by the proceedings, or as against whom they were evidence that the estate was insolvent.—*McGuire v. Shelby*, 20 Ala. 456 ; *State Bank*

*v. Ellis,* 30 Ala. 478. At the time of the institution of the proceedings in insolvency, there was no personal representative of the estate of D. M. Taylor, and an administrator subsequently appointed is not affected or concluded thereby. The settlements and decrees on the insolvent estate are, as to the complainants, *res inter alios acta.* If, by the maladministration of the personal representative, their special rights and interests have been impaired, or brought to nought, a court of equity, on a proper case made, has jurisdiction to compel an accounting, and a settlement of the administration of the property, real and personal, specifically bequeathed and devised to them, and to those whom they represent. The controlling purpose of the bill is not a settlement of the administration of the entire estate, though it may involve such settlement. The direct object is to recover specific real property, and damages specially caused to the complainants by the alleged wrongful and fraudulent conduct of the administrator. Of course, to sustain such bill, it must be shown that, on the proper accounting being had, there will remain, after paying the debts of the estate legally and equitably due, assets to which the complainants are entitled.

In November, 1867, McPherson, as the personal representative, made application to the Probate Court for an order to sell the lands, on the ground that the personal property was insufficient to pay the debts of the estate. In January, 1868, the court granted an order to sell the lands, for cash ; under which they were sold by the administrator, in May, 1869, and were bid off by Hugh McMillan, at the sum of $8,342.80. On June 14, 1869, the sale was confirmed by the Probate Court, and an order made for a conveyance to the purchaser. On the succeeding day, McPherson, as administrator, executed a conveyance to McMillan ; and on the same day, McMillan conveyed an undivided moiety of the lands to Mrs. McPherson, the widow of the administrator. The latter deed recites generally, *"for divers good and sufficient considerations by me received;"* but no consideration in fact moved from Mrs. McPherson, or her husband, to McMillan, and there is no pretence, that she ever paid to the administrator any part of the purchase-money. In her testimony, she says the purchase was made to save the lands for McMillan and herself ; and without expressing it in terms, intimates that the consideration was an indebtedness on account of her separate estate. In 1868, Colgin conveyed to Mrs. McPherson a house and lot, which McPherson had purchased from him at the price of about $3,000. As Colgin testifies, the deed was made to Mrs. McPherson, at the request of her husband, because, as he stated, he had converted her separate estate, and desired to invest in the house and lot for her

[McMillan et als. v. Rushing et als.]

benefit. The separate estate consisted of several slaves, and of money less than a thousand dollars. The slaves were emancipated, and for them and their hire the husband was not responsible ; and the house and lot was a manifold payment of the money estate. The conclusion is irresistible, that the lands were really purchased by McMillan in his name for the benefit of himself and McPherson ; and that the conveyance to Mrs. McPherson was voluntary—a gift by the husband to the wife. The purchase-money, except a small amount, was paid with claims against the estate purchased by the administrator and McMillan.

Thus the bill and the facts make the case of a sale of the lands of an estate, by an administrator, in the purchase of which he is interested. A purchase of lands at his own sale by an administrator, having no interest in the property sold, is voidable at the option of the heirs, or devisees, expressed in due time.—*Daniel v. Stough*, 73 Ala. 379 ; *James v. James*, 55 Ala. 525 ; *Calloway v. Gilmer*, 36 Ala. 354. A purchase by a third person in his own name, for the joint benefit of himself and the administrator, does not exempt it from the operation of the rule. As a general rule, no officer or person charged with the sale of property, whether by an order of court, or power from the owner, will be permitted to become the purchaser. Assuming a fiduciary relation to another, it is the duty of the trustee to exercise all the knowledge and advantages which he acquires by reason of his position, for the benefit of his *cestui que trust*. As vendor, his duty is to sell the property for the highest price ; as purchaser, his interest is to buy it for the lowest. A court of equity will not suffer relations, so essentially repugnant, to be united in the same person. The only exception to the rule, in respect to an executor or an administrator, admitted by our decisions, is when the personal representative has an interest in the property sold ; and regrets, on account of this exception, have been expressed. A purchase at a sale of land made by an administrator, though under a decree of the Probate Court, in which he is interested, directly or indirectly, entirely or partially, will be set aside, on the seasonable application of those interested. The purchase is equally voidable as to any one who may unite with the administrator ; for, having joined with him in the commission of an act violative of his duty, and against the policy of the law, he must share the consequence.—*Hunt v. Bass*, 2 Dev. Eq. 292 ; *Armstrong v. Campbell*, 3 Yer. 201 ; 1 Lead. Cas. in Eq. 246.

The report of the sale to the Probate Court states : " *The said Hugh McMillan has arranged the payment of said sum of $8,342.80 with him, the said administrator, so that he, the*

[McMillan et als. v. Rushing et als.]

*said administrator, reports the same as in fact paid, and chargeable to said administrator.*" The report of payment is cautiously worded, and may be true, and yet none of the purchase-money actually paid. Without further proof of payment, the court should not have confirmed the sale. By the statute then in force, the court must make an order confirming the sale, whenever satisfied that it was fairly conducted, that the land sold for an amount not greatly less than its real value, and the purchase-money is sufficiently secured.—Code of 1876, § 2467. Such decree of confirmation does not defeat the application of the equitable doctrine. The question of the fairness of the sale, or of a full price, or of the payment of the purchase-money, is immaterial. The rule is not intended merely to redress an injury committed; but, by removing temptation, to prevent fraud and injury. The parties interested have a clear right to avoid the sale, when it falls within the general principle, irrespective of the facts of the particular transaction.—*Foxworth v. White,* 72 Ala. 224.

The infancy of the devisees, who filed the bill, exempts them, both from the operation of the statute of limitations, and from the imputation of *laches*, or unreasonable acquiescence, such as will render their claim stale in the contemplation of a court of equity. The general rule is, though subject to some exceptions, that *laches* will not be imputed to an infant during minority, as he is not, in legal contemplation, cognizant of his rights, or capable of enforcing them. If infancy intervenes, the staleness of the transaction does not work prejudice. The complainants had no guardian. They resided with the family of the administrator and his relatives. The bill was filed within less than two years after the eldest attained her majority. The option to avoid the sale was seasonably expressed.

The defendants, who claim title to the lands, are not in a position to invoke the protection accorded to *bona fide* purchasers without notice of outstanding equities. An essential element to the relation is, that the party shall not be a mere donee. He must have parted with value, or changed his condition to his detriment, believing that his vendor is capable to convey a fee-simple estate. Mrs. McPherson, as we have said, neither gave nor released anything of value, as a consideration for the conveyance to her, nor did she alter her condition for the worse. She acquired her title by a mere donation of her husband. Whatever right Mrs. McMillan has was derived by the purchase of her deceased husband's interest, at her own sale as administratrix of his estate, under a decree of the Probate Court. On such sale, there is no warranty; the buyer purchases at his peril, acquiring only the estate or interest

which the decedent had. The conveyance, ordered by the court, only conveys "all right, title, and interest, which the deceased had in such lands at the time of his death." Mrs. McMillan occupies no better position than a vendee, who agrees to take the title of his vendor, without stipulation or covenant that it shall be good. The sub-purchaser, Jacob Taylor, claims solely by quit-claim deed. The uniform rule is, that a purchaser, taking merely a quit-claim conveyance, which passes only such title as the grantor has, is not a *bona fide* purchaser entitled to protection against equities.—*Smith v. Parry*, 56 Ala. 266. A recovery of rents follows as an incident the recovery of the lands.

We do not deem it necessary to consider, in the present state of the case, the other questions of fact, as we reach the same conclusions as the chancellor in respect to the substantial matters involved in the decree, though on different principles. The questions relating to the alleged wrongful and fraudulent conduct of McPherson, and his conspiracy with McMillan to defraud the complainants, will more properly arise on the reference to the register, when he will ascertain with what sums of money or assets McPherson is chargeable as administrator, what disposition he has made of them, and what amounts he is entitled to be reimbursed, as having been expended in payment of debts justly due by the estate. Other and additional testimony may be introduced as to these matters, and we forbear to express an opinion on them at the present time.

The petition for the sale of the lands was sufficient to give the court jurisdiction; and the proceedings and order of sale appear to be regular. The chancellor should not have annulled and set aside the order of sale. The court can direct a sale under the order, without further proceedings and proof, if a sale becomes necessary; and a sale under it can not be made without the leave and direction of the court. No injury can result from the order being suffered to remain in force.

The decree will be amended, in accordance with this opinion, and, as amended, is affirmed.