BEAN v. HARRISON. (4 Div. 147.)

(Supreme Court of Alabama. April 16, 1925.)

I. Courts ⊜⟹202(4)—Statute as to rehearings within four months held applicable to judgments and decrees of probate court.

In view of Code 1923, § 9600, extending code provisions relating to pleading, practice, judgments, and decrees, *held* that section 9521, relating to grant of rehearings within four months includes judgments and decrees of probate court despite section 9522 requiring application to be addressed to judge of circuit court.

---

⊜⟹For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
213 ALA.—3          [1] Post, p. 274.

**2. Guardian and ward ⊙⟿180—Decree on final settlement of guardianship conclusive against surety.**

Under Code 1923, § 8212, a decree on final settlement of guardianship, lawfully made and without fraud, is conclusive on and has force and effect of judgment against sureties on guardian's bond.

**3. Judgment ⊙⟿382—Surety on guardian's bond, bound by decree on final settlement of guardianship, may apply for rehearing under four-months' statute.**

In proper case, a surety on guardian's bond, being bound by decree on final settlement of guardianship, may make application for rehearing under the four-months' statute. Code 1923, § 9521.

**4. Guardian and ward ⊙⟿158—That presumption will be indulged in favor of judge's findings on oral testimony not reason for proceeding on depositions.**

Fact that if application for rehearing of final settlement of guardianship, under Code 1923, § 9521, is tried on oral testimony before judge of probate, presumption will be in favor of judge's finding on appeal, is no reason for permitting trial to be on depositions.

**5. Judgment ⊙⟿373—Agreement between insolvent guardian and ward, binding surety for greater sum than legally due, is fraud entitling surety to rehearing.**

When the position of guardian by reason of insolvency or other cause becomes antagonistic to surety, good faith requires that guardian enter into no voluntary adjustment binding surety for greater sum than is legally due ward, and if he does and ward participates therein after he is sui juris, it is a fraud, entitling surety to rehearing under the four-months' statute. Code 1923, § 9521.

**6. Judgment ⊙⟿392—Burden on one seeking rehearing to show good defense and injury from alleged fraud or mistake.**

The burden is on one seeking a rehearing under the four months' statute (Code 1923, § 9521) to show good defense and injury from alleged fraud or mistake, and in case of surety on guardian's bond seeking rehearing of final settlement of guardianship, burden is met by prima facie showing, that on full hearing, decree will probably be for sum substantially less than that rendered.

**7. Guardian and ward ⊙⟿150—Guardian using ward's funds forfeits claim to compensation for services.**

Guardian, using funds of ward as his own, thereby forfeits all claim to compensation for services as guardian.

**8. Guardian and ward ⊙⟿54—Guardian failing to make partial settlement and converting funds to his own use liable for interest thereon.**

A guardian, who during whole period of guardianship, made no partial settlement as required by law, and also converted funds of ward to his own use, became liable for interest thereon.

**9. Parent and child ⊙⟿3(1)—Natural duty of father to maintain minor children not changed by appointment of father as guardian.**

A father has general duty to maintain minor children, and correlative right to their services during minority, and neither is entitled to make charge against other for performance of such duty, and appointment of father as guardian does not change this natural duty.

**10. Parent and child ⊙⟿3(2)—Portion allotted from child's estate where father unable to properly maintain and educate child.**

Where father is unable to maintain and educate child according to his station in life, court will appropriate portion of minor's estate for such purpose or allow father credit as guardian for ward's funds so used.

**11. Parent and child ⊙⟿3(2)—Ward's estate not charged with expenditures by father which did not tend to better educate or improve standards of living of ward.**

If estate of ward under father's guardianship is devoted to obtaining better education and better fitness for future success than father could otherwise furnish, he should be credited therefor, but if ward is brought up in same environment and standard of living as he would have had without inheritance, estate could not be charged therewith.

**12. Parent and child ⊙⟿3(2)—Father, as guardian of minor son investing funds in home, entitled to credit on interest, but not on corpus for resulting benefits to son.**

Where father, as guardian of minor son without order of court invested funds in a home of which son had common enjoyment, father *held* entitled to credit, as against liability for interest, but not on liability for corpus for any benefit to son from better home than father could otherwise have furnished, and expenses of better education by reason of such investment.

**13. Guardian and ward ⊙⟿13(7)—Proceedings not void because order not entered on minutes.**

Under Code 1923, § 7694, letters of guardianship are primary evidence of fact of guardianship and guardianship proceedings are not rendered void for failure to enter on minutes an order appointing guardian.

**14. Appeal and error ⊙⟿110—Order granting rehearing not appealable.**

An appeal does not lie from an order granting rehearing.

Appeal from Probate Court, Coffee County; J. A. Carnley, Judge.

Petition of K. W. Harrison for rehearing of a decree rendered on final settlement of guardianship of P. W. Bean as guardian of Oliver C. Bean. From an order granting a rehearing, the respondent ward appeals and applies for mandamus. Appeal dismissed; mandamus denied.

---

⊙⟿For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

W. W. Sanders, of Elba, for appellant.

A court has no authority to vacate its judgments after the term at which rendered. 9 Michie's Ala. Dig. 101; Hudgins v. Pickens County, 10 Ala. App. 377, 64 So. 472; Medley v. Shipes, 177 Ala. 94, 58 So. 304; Singo v. Fritz, 165 Ala. 658, 51 So. 867; Moore v. Winston, 66 Ala. 296. The four months' statute does not apply to probate courts. Singo v. Fritz, supra. The father is bound to support his minor children, even though they have property of their own. Pharis v. Leachman, 20 Ala. 662; Alston v. Alston, 34 Ala. 15; Englehardt v. Young's Heirs, 76 Ala. 534.

M. S. Carmichael, of Montgomery, M. A. Owen, of Elba, and Fleming & Yarbrough, of Enterprise, for appellee.

Appellee is an interested party and has a right to be heard. Williamson v. Howell, 4 Ala. 693; Hailey v. Boyd's Adm'r, 64 Ala. 399; U. S. F. & G. Co. v. Harton, 202 Ala. 134, 79 So. 600; Rittenberry v. Wharton, 176 Ala. 391, 58 So. 293; Willis v. Rice, 141 Ala. 168, 37 So. 507, 109 Am. St. Rep. 26. The four months statute authorizes rehearing of probate decrees. Ingram v. Ala. Power Co., 201 Ala. 13, 75 So. 304; Code 1907, §§ 5372, 5438; Code 1923, §§ 9521, 9600. The decree was void, because no order was made appointing guardian. Code 1923, §§ 8094, 8135; Hall v. Hudson, 20 Ala. 284; L. & N. v. Perkins, 152 Ala. 133, 44 So. 602. A meritorious right is shown by petitioner. Starling v. Balkum, 47 Ala. 316; Calhoun v. Calhoun, 41 Ala. 371.

BOULDIN, J. [1] The appeal is from an order of the probate court granting a rehearing of a decree rendered on final settlement of a guardianship.

The proceeding was under the four-months' statute, viz.:

"When rehearing granted within four months. When a party has been prevented from making his defense by surprise, accident, mistake, or fraud, without fault on his part, he may, in like manner, apply for a rehearing at any time within four months from the rendition of the judgment." Code 1923, § 9521 (5372).

The question is raised: Does this statute apply to proceedings in the probate court? Prior to the Code of 1907 it applied only to judgments at law in circuit courts or courts of like jurisdiction. Stover v. Hill, 208 Ala. 575, 94 So. 826; Singo v. Fritz, 165 Ala. 664, 51 So. 867.

Section 3380, Code of 1896, extended to probate courts the provisions of the Code relating to rules of evidence in courts of law.

By section 5438, Code of 1907, this section was amended to read:

"Rules of evidence; *pleading and practice*. The provisions of this code in reference to evidence, *pleading and practice, judgments and decrees*, in courts of law *and chancery, so far as the same can be made appropriate,* and the mode of obtaining evidence *by oral examination or* by deposition, and of compelling the attendance of witnesses, *and of enforcing orders, decrees and judgments*, in the absence of express provision to the contrary, are applicable to proceedings in the court of probate." (Italics supplied showing changes.) Code 1923, § 9600.

This quoted section makes a general revision of the former statute. In extending the code provisions relating to pleading and practice, judgments and decrees, it should be construed in the same sense as the original section relating to rules of evidence. The four-months' statute appeared in the code chapter on Pleading and Practice, and a special article touching the reopening of judgments in the court where rendered.

In Ingram v. Alabama Power Co., 201 Ala. 13, 75 So. 304, was presented an application under the four-months' statute for a rehearing of condemnation proceedings in the probate court. The case came here by appeal from the judgment of the circuit court awarding mandamus to the judge of probate to vacate his order granting a rehearing. The case was affirmed on the ground that the application for rehearing made no attempt to show a meritorious defense—a necessary averment to warrant a rehearing. The decision proceeds on the assumption that a proper application would be entertained. The case may be considered as persuasive merely of the views of the court on the question before us. We think the effect of the revision of 1907 is to extend the four-months' statute to judgments and decrees of the probate court. We do not concur with appellant that Singo v. Fritz, 165 Ala. 658, 51 So. 867, is opposed to this view. The petition in that case was filed some two years after the order assailed, and the four-months' statute was not relied upon. A former petition, therein discussed, was prior to the Code of 1907. Nor does the provision of section 9522 of the Code of 1923, requiring the application to be addressed to the judge of the circuit court, defeat our construction of section 9600. Taken together, they mean the application is addressed to the judge of the court where the judgment or decree was rendered.

Another question is: Was the surety on the guardian's bond a party to the final settlement entitled to this statutory remedy? The injury complained of by the surety, in brief, is this: P. W. Bean, the guardian, was the father of Oliver C. Bean, the ward. When the ward arrived at age, the guardian was insolvent. Thereupon, the father and son collusively and fraudulently entered into a friendly statement of the account, and caused it to be entered as the decree of the court on final settlement, with the purpose of binding the surety on the bond for an amount greater than was really due the ward on a

just and legal accounting; that the surety, without fault on his part, had no information of the pending settlement until more than 30 days after the decree was entered.

[2] A decree on final settlement of a guardianship, lawfully made and without fraud, is conclusive upon and has the force and effect of a judgment against the surety on the guardian's bond. U. S. Fidelity & G. Co. v. Harton, 202 Ala. 134, 79 So. 600; Code 1923, § 8212; Hailey v. Boyd's Adm'r, 64 Ala. 399; Williamson v. Howell, 4 Ala. 693.

[3] The surety is, therefore, a party in interest at the settlement. The four-months' statute is intended to confer a speedy, inexpensive remedy at law in case of a surprise, accident, mistake, or fraud, similar and cumulative to the remedy in equity on like grounds. To give effect to this intent, the relief at law should inure to the same parties as the relief in equity. We conclude that, in a proper case, the surety bound by the decree on final settlement of a guardianship may make application for rehearing under the four-months' statute. Ingram v. Alabama Power Co., 201 Ala. 13, 75 So. 304; Evans v. Wilhite, 167 Ala. 587, 52 So. 845.

Taking up the question of fraud in the settlement, the application for rehearing was tried on oral testimony before the judge of probate. The usual presumptions in favor of his findings of fact are to be indulged.

[4] An objection was made by the ward, appellant here, to this method of hearing the evidence. It is argued that the trial should be on depositions, and not on oral testimony, because in the latter case the party is deprived of a right of review on the facts without presumption in favor of the judgment below. The argument is untenable. The presumption itself is founded upon that common experience which recognizes the advantage of seeing and hearing the witnesses, observing their manner on direct and cross-examination, as an aid in passing upon the weight of testimony. To deprive a party of this privilege on a hearing, because of the presumption which justly follows, when we come to review the evidence in record form, would be most illogical.

The evidence supports the view that the guardian was at the time of the settlement wholly insolvent, having no property to be reached by execution; that this was known to the ward; that they, father and son, were conscious that the settlement being made was essentially an adversary suit for the purpose of making collection from the sureties on the bond. The sureties were not present, nor represented, had no knowledge of the pending proceedings; the hearing was had at Elba, a different courthouse from that at which the guardianship was pending; and the notice by publication did not run for the full 18 days from first publication and did not name the place of settlement. The pub-

lication was under the direction of the judge, but its irregularity may be considered in passing upon the question of failure of the surety to obtain information of the settlement. The guardian and ward virtually agreed in advance that the guardian be charged with the full amount of funds received by the guardian with interest, less small expenditures connected with the guardianship proceedings in their inception.

[5, 6] By reason of the privity between the guardian and surety on his bond, their interests upon a settlement are normally the same. The ward is regarded the adversary of both and is entitled to personal notice. The surety has only constructive notice by publication, but, because of the privity between him and the guardian, he is bound by the accounting in the absence of fraud. When, as in all like cases, the position of the guardian, by reason of insolvency or other cause, becomes antagonistic to his surety, the obligations of good faith make it his legal duty to enter into no voluntary adjustment which binds the surety for a greater sum than legally due the ward; and if he does, the ward participating therein after he is sui juris, it is a fraud, which entitles the surety to a rehearing. Among other things, the burden is on a party asking a rehearing to show a good defense, that he has suffered injury by the alleged fraud or mistake. This burden is met in a case of this kind by a prima facie showing that on a full and fair hearing the decree will probably be for a sum substantially less than that rendered. Ingram v. Alabama Power Co., supra.

This principle presents the most difficult question on this record. The trial court, seemingly impressed that the surety did not have a fair deal at the settlement, proceeded in his opinion to say:

"It is the opinion of the court that, if the true facts had been disclosed to the court on the final settlement, hearing the amount of the recovery would be much less, if any at all. It is the opinion of the court that the guardian used considerable sums in the support and education of the son and ward, for which he was in law entitled to credit, and that he did not claim any credit or commissions for the reason he desires his son to collect the whole from the sureties, with interest added."

It is important to note here, and be kept in mind in the further progress of the cause, that any wrong done the surety on the settlement must be carefully disassociated from failure of duty on the part of the guardian in the management of the ward's estate. For the faithful performance of the duties of the guardian and a proper accounting, the surety is fully bound. For that purpose bonds are given and required by law for the protection of the ward's estate. The settlement should proceed exactly as if the guardian was now fully able to pay any decree

rendered against him; the surety should pay no more and no less.

The estate of the ward consisted of a small fund in money, some $700, inherited from his mother. The father and guardian was a small farmer. The major portion of the money came to his hands as guardian more than 12 years before the settlement. Most of the fund was invested directly or indirectly by the father, as his own money, in a small farm in Covington county. Here he made the home of himself and family, including Oliver and 7 younger children, half-brothers and sisters of Oliver. Without prolonging details, what followed is the story of the struggles of a family on a little farm of 120 acres under boll-weevil conditions, ending at last in the loss of the home under mortgage. According to the evidence, Oliver grew up as a normal, healthy boy, began work on the farm at an early age, and continued to do his part until he arrived at the age of 21 years. He was sent to free schools until he reached the seventh grade. His food and clothing were in keeping with his condition as a member of the family, and do not appear to have been made more expensive because of an inheritance of his own. There is some evidence of general admissions that some part of his funds were used for his benefit, and of the reasonable expense of his maintenance per year. Several important principles must enter into a proper accounting for his inheritance under these facts. A failure of duty, a want of due regard for the high trust committed to a guardian, meets us all the way.

[7] The guardian seems to have treated the fund and used it as his own from the beginning. This all too common practice of parents handling funds of their children as guardian is a breach of trust not to be winked at by courts called upon to protect those who cannot protect themselves. Such practice not only wrongs the child in dollars and cents, but tends to blunt a keen sense of the dividing line between mine and thine. One result of the use of funds of the ward is to forfeit all claim to compensation for services of the guardian. The law cannot sanction a reward for breach of trust. McGowan v. Milner, 195 Ala. 44, 70 So. 175. The trial court mistook the law on this point in declaring the guardian's failure to deduct commissions one of the grounds for granting the rehearing.·

[8] During the whole period of the guardianship, there was no partial settlement as required by law. This, as well as the conversion of the funds to the guardian's own use, rendered him liable for interest thereon. For the guiding principles in making the interest charge, see McGowan v. Milner, supra; Willis v. Rice, 157 Ala. 252, 48 So. 397, 131 Am. St. Rep. 55; Childress v. Childress, 49 Ala. 237; Bryant v. Craig, 12 Ala. 354.

[9] The most difficult feature of the case is whether the guardian is entitled to a credit on account of funds of the ward expensed in, or funds of the guardian contributed to, the maintenance and education of the ward. The father has the general duty to maintain his minor children, and the correlative right to their services during minority. Neither is entitled to make a charge against the other for the performance of such duty. The appointment of the father as guardian does not change this natural duty. Where both parent and child perform such duty, the accounts on that score should be treated as squared.

[10] If the father is unable to maintain and educate the child according to his station in life, then the court will appropriate such portion of the minor's estate as may be proper for the purpose, or, for like reason, allow the father credit as guardian for the ward's funds so used. These general rules have been often stated and recognized. Baines v. Barnes, 64 Ala. 375; Englehardt v. Yung, 76 Ala. 534; Alston v. Alston, 34 Ala. 15; Pharis v. Leachman, 20 Ala. 662. In making application of these principles, regard should be had to the circumstances of each case.

[11] If the estate of the ward is devoted to obtaining a better education, better environment, and better fitness for future success as well as citizenship, than the father could otherwise furnish, he should be credited therefor. On the other hand, if the son is brought up in the same environment, with the same education and standard of living as he would have had without his inheritance, meantime contributing faithfully his services, his estate should not be charged therewith.

[12] One feature of the evidence in this case tends to show that Oliver's money went into a home, of which he had a common enjoyment with the other members of the family. If title had been taken as it should have been to preserve his estate so invested, it would have been a proper credit. But as title was not so taken, the inquiry comes, could the father have furnished him the same home, schooling, and general maintenance, without the aid of this investment? If not, the added good coming to Oliver by living in a home so acquired may be considered in stating the account. Any credit on this line must be limited to the income or interest charge to be made, and it must be further limited to such benefits as accrued to Oliver, not to the entire family. The expenses, if any, of getting a better education by reason of this investment than he could have otherwise obtained may also go against such income or interest charge. We find nothing in the record here which would warrant any intrenchment upon the corpus of the estate. Statutes make provision for a

guardian to· obtain an order of court in advance where such necessity arises. When a guardian assumes to appropriate the corpus of the estate to the maintenance and education of the ward, without order of court, he should be held to a very strict account in showing a necessity so to do. Much more so, when the guardian converts the fund, and the ward's benefits therefrom are only incidental and in common with others. Englehardt v. Yung, supra.

[13] We do not concur in appellee's contention that the entire guardianship proceedings are void for failure to enter upon the minutes an order appointing a guardian. Letters of guardianship are primary evidence of the fact of guardianship. Code 1923, § 7694.

[14] In view of the presumption indulged in favor of the trial court, and upon consideration of the whole evidence, we will not disturb his finding. The account on settlement should be stated in the light of principles above announced, and upon a hearing de ‘novo, without any presumption for or against the original statement of account, and without regard to any conclusions ·reached or announced on the application for rehearing. It seems settled that an appeal does not lie from an order granting a rehearing. Ingram v. Alabama Power Co., 201 Ala. 13, 75 So. 304.

The appeal is, therefore, dismissed, and application for alternative writ of mandamus denied.

ANDERSON, C. J., and SOMERVILLE and THOMAS, JJ., concur.