147 So. 635

### COURSON et al. v. TOLLISON.
### 4 Div. 634.

Supreme Court of Alabama.
Jan. 19, 1933.

Rehearing Denied April 27, 1933.

Powell, Albritton & Albritton, of Andalusia, for appellee.

E. O. Baldwin, of Andalusia, for appellants.

532

**FOSTER, Justice.**

■ The sureties on the guardian's bond made intervention and became parties to this proceeding, but, when they are not parties, a decree on final settlement amounts to a personal decree against them. Section 8212, Code; Bean v. Harrison, 213 Ala. 33, 104 So. 244; Ex parte Chapman, 225 Ala. 168, 142 So. 540; United States F. & G. Co. v. Harton, 202 Ala. 134, 79 So. 600.

There was in this case only one bond by the guardian of four minors, with a single penalty, and all in a joint proceeding. Of course, the entire liability on the bond could not exceed the amount of the penalty.

■ This is a proceeding for final settlement of the guardianship of all the minors. They each, therefore, have a community of interest to see that each claim is such that they do not jointly exceed the penalty of the bond, or that, if so, the amount of such penalty is prorated among them. For such reason we held in United States F. & G. Co. v. Benson Hardware Co., 222 Ala. 429, 132 So. 622, that a single appeal, though joint, was not improper nor subject to dismissal. The same reason here applies. The errors are separately assigned as authorized by order of this court.

On April 11, 1908, James H. Tollison was appointed guardian for his four minor children; John J., who was 11; Nobia Mae, 10; Lena Gray, 7; and Jimmie, 18 months. On October 8, 1908, he filed an inventory showing that he had received $1,970, though the exact amount he received for them was $1,974.84. On May 12, 1908, he deposited to his individual account in the bank $1,460. He had received that amount on that day, or the day before, for his children after their mother had died, and the deposit was made of such fund in his own name. He had no account in the bank as guardian, and kept no account of his transactions as such. He mixed it with his own funds and began to check on it, though the dates and amounts of the checks do not appear. The balance

of the $1,974.84 was received at various times in 1908, 1909, and 1910, and deposited in the bank to his individual credit, and he used it as his own, as he did the entire amount. He made no accounting in court, no annual or other settlement, and did nothing in court, nor out, so far as the record shows, in recognition of the guardianship, and nothing else was done in connection with it until March 2, 1926, when Lena Gray, one of the wards, filed a petition in the probate court to require a final settlement. She was then about 24 or 25 years old, and was married, having married in May, 1921, when she was then over 18 years of age. So that she was then of full age. Section 8274, Code. In response to a citation, the guardian filed his account in the probate court on March 20, 1926, showing that he had received for her $493.71, and paid out for her $745.25, and filed a petition to remove the cause into the chancery court, which was done by order dated March 26, 1926. There was no proceeding in the chancery court after its removal there until November 24, 1930. In the meantime, Nobia Mae, one of the wards, had executed a written release of the guardian from further liability; but such release did not appear in the evidence. On November 24, 1930, the three wards other than Lena Gray appeared by counsel and also prayed for a settlement by the guardian in respect to their separate estates.

At that time John J. was approximately 33 years old; Nobia Mae married about 1918, when she was over 18 years old, and had been of full age when her petition was filed, for about 12 years; Jimmie was 21 years old October, 1927, and therefore had been of full age 3 years or more when her petition was filed.

The guardian had converted the bulk of the funds in early 1908, and had supported the wards, who were his children, reared and educated them until they married, except the youngest, when she went to live with a sister when she was 17. During that time they had rendered their part of the domestic work at home, such as is customary.

The chancery court held in effect that the several claims were either stale or the wards were chargeable with laches.

From October 8, 1908, when the guardian filed his inventory, to March 2, 1926, when Lena Gray filed her motion for a settlement, near 18 years had elapsed. Lena Gray was then of full age, and had been so 4 or 5 years (their exact ages are not shown). When the other three filed their motion in 1930, about 21 years had elapsed, and one of them had been of full age more than 3 years, and the other two, 11 to 12 years.

■■ It is clear that the rule of repose or staleness of demand by prescription in such situation is 20 years from the "last item on

the guardian's account, * * * or other clear recognition of the guardianship." Garrett v. Garrett, 69 Ala. 429; Snodgrass v. Snodgrass, 176 Ala. 276, 58 So. 201; Patterson v. Weaver, 216 Ala. 686, 114 So. 301; Rhodes v. Turner, 21 Ala. 210. But, though 20 years may have not expired, a claim will not be enforced in equity due to laches "where, from delay, any conclusion the court may arrive at must at best be conjectural, and the original transactions·have become so obscured by lapse of time, loss of evidence, and death of parties as to render it difficult, if not impossible, to do justice, the plaintiff will by his laches be precluded from relief; and it is not even necessary that the court should be satisfied that the original claim was unjust, or has been satisfied." Salmon v. Wynn, 153 Ala. 538, 45 So. 133, 135, 15 Ann. Cas. 478; Rives v. Morris, 108 Ala. 527–530, 18 So. 743; Snodgrass v. Snodgrass, supra; 21 Corpus Juris, 212; Gayle v. Pennington, 185 Ala. 53, 64 So. 572; Abernathy v. Moses, 73 Ala. 381; Meeks v. Miller, 214 Ala. 684, 108 So. 864.

The length of time is an important element of laches, but not the sole consideration (21 Corpus Juris, 219), it includes changes in the relative positions of the parties, so as to work inequity (21 Corpus Juris, 231), and when clear and satisfactory evidence has been lost or obscured by long delay (21 Corpus Juris, 234), and when there is no excuse for delay shown (21 Corpus Juris, 237). Infancy is ordinarily an excuse for delay, but not for prescription of 20 years. But the infant has only a reasonable period after attaining majority in which to proceed, in the absence of a statute of limitations. Such reasonable time is in the sound discretion of the court. 21 Corpus Juris, 217–219, 241; McMillan v. Rushing, 80 Ala. 402; Holt v. Wilson, 75 Ala. 58; Meeks v. Miller, supra.

A ward cannot coerce final settlement until he arrives at full age, or the guardian dies, resigns, or is removed. Section 8218, Code. There is no statute which limits the time thereafter in which the ward may institute such proceedings. The limitation of 6 years in subdivision 7 of section 8944, Code, applies to actions against sureties, and is only set in motion after the guardian, as principal, has been adjudged to be due a definite sum on settlement. Presley v. Weakley, 135 Ala. 517, 33 So. 434, 93 Am. St. Rep. 39.

It is provided in section 6522, Code, that the limitations of actions at law apply to suits in chancery. · But this has been held to be a legislative affirmation of the doctrine theretofore existing that "in all cases of concurrent jurisdiction, the statutes of limitation were as obligatory on these courts as on courts of law. In all cases of exclusive equitable cognizance, the courts applied them by analogy, and thus they were obeyed in equi-

ty as at law." Morrison v. Stevenson, 69 Ala. 448, 451; Johnson v. Toulmin, 18 Ala. 50, 52 Am. Dec. 212; Askew v. Hooper, 28 Ala. 634.

But the adoption of any time in chancery when no statute applies is one which appeals to sound equitable principles as well as analogies of the law. "Where there has been gross laches in prosecuting rights, or a long or unreasonable acquiescence in the assertion of adverse claims," equity will not interfere in the enforcement of equitable remedies. In fixing such time as constitutes laches, in a given situation, it "must look to the circumstances." Askew v. Hooper, supra.

This proceeding is not of exclusively equitable jurisdiction, but is concurrent with the probate court. Ex parte Chapman (Ala. Sup.) 142 So. 540.[1] So that, if a statute of limitations applied to the latter court, it would probably be binding in equity. The defense of laches is an inherent principle of equity, and does not ordinarily apply to courts of law. 21 Corpus Juris, 212 et seq.

But in the matter of the administration of guardianships and of the estates of decedents, the probate court is not only a court of general jurisdiction (section 9579, Code), but, while it does not possess equity powers (15 Corpus Juris, 1014; Moore v. Winston's Adm'r, 66 Ala. 296; Burch v. Gaston, 182 Ala. 467, 62 So. 508), it does enforce its jurisdiction upon equitable principles, "and proceeds in many respects after the manner of courts of equity" (15 Corpus Juris, 1015). But whether the equitable doctrine of laches would apply in the probate court is not the question here.. This is in equity where such principle does apply.

Section 8960, Code, allows an infant 3 years after attaining majority to commence a suit at law. But this does not shorten the period prescribed by a statute of limitations. Neither does it extend the rule of prescription. Alexander v. Hill, 88 Ala. 487, 7 So. 238, 16 Am. St. Rep. 55. A court of chancery, since there is no statute which applies either directly or by close analogy, will take into consideration all allied and kindred provisions, such as the 3 years (after arriving at full age) provided in section 8960; and the 6 years provided in section 8944, subdivision 5, for a suit on a liquidated account, and subdivision 7 for actions against sureties on certain bonds, applicable only after a court has liquidated the claim (Presley v. Weakley, 135 Ala. 517, 33 So. 434, 93 Am. St. Rep. 39); and the 3 years provided in section 8947, for a suit on an open or an unliquidated claim— all in connection with the nature of this claim and the circumstances of this case, which naturally appeal to the conscience of the court. It is said that "each case is to be determined (in this respect) according to its

[1] 225 Ala. 168.

534

own particular circumstances. And is addressed to the sound discretion of the court." 21 Corpus Juris, 217.

This court has limited minors to 2 years after attaining full age in which to disaffirm a mortgage foreclosure sale when such rights existed. Canty v. Bixler, 185 Ala. 109, 64 So. 583; Alexander v. Hill, supra.

 The chancellor held that the rule of laches applied to all the wards, because of the following circumstances: Two of them had waited 3 to 5 years, and two, 11 to 12 years, after attaining full age, before instituting a proceeding to coerce a settlement, and not until the guardian, their father, had become insolvent; that he had received the bulk of the money about 18 years before the first proceeding was begun, and about 22 years before the other three joined in it, and had reared and educated the wards; and at the trial he could not, or was unwilling to, render a full account, because of the loss or suppression of evidence; two of the sureties had died, and the relations of one of them with the guardian had become strained, with a change of the guardian's attitude toward the claims of the wards; an unreasonable and significant delay in prosecuting the matter after the first application was filed, in which period one of them had executed a release of the guardian, but which was not produced on the trial; and an inference of collusion between the guardian, who was insolvent, and his wards, who are his children, to create a result which would fall on the sureties, and probably on them only. The conclusion of the court is amply supported by the evidence and sustained by the principles we have discussed.

 The defense of laches is available to the sureties on the bond for the reasons discussed in Bean v. Harrison, 213 Ala. 33, 104 So. 244.

The motion to dismiss the appeal is overruled, and the decree of the circuit court in equity is affirmed.

Affirmed.

ANDERSON, C. J., and GARDNER and BOULDIN, JJ., concur.

### On Rehearing.

FOSTER, Justice.

This is not a proceeding against the sureties, but it is against the guardian in life. The sureties appeared to see to it that there would be an unbiased judicial determination of the liability of the guardian, which would affect their rights. Section 8212, Code; Bean v. Harrison, 213 Ala. 33, 104 So. 244.

The question is not analogous to a proceeding against the sureties, for their interest here is only indirect, but it is, as we have said, a proceeding against the guardian in life, after the time when he is due to make settlement.

The case of U. S. F. & G. Co. v. Sinclair, 206 Ala. 549, 90 So. 298, was a proceeding in equity against the sureties, after the death of the guardian. Equity alone then had jurisdiction to proceed against them. Presley v. Weakley, supra; U. S. F. & G. Co. v. Pittman, 183 Ala. 602, 62 So. 784. So that the analogy to subdivision 7 of section 8944 was perfect, but not so in this case. There is no statute of limitations directly analogous.

We are still of the opinion that we have correctly disposed of this case for the reasons we have fully discussed.

Application overruled.

ANDERSON, C. J., and GARDNER and BOULDIN, JJ., concur.