66 So.2d 77

### W. T. SMITH LUMBER CO. v. BARNES et al.
#### 4 Div. 742.

Supreme Court of Alabama.
May 14, 1953.

Rehearing Denied June 18, 1953.

Murphy & Murphy, Andalusia, for appellant.

Hiram J. Brogden Jr., and Edw. H. Brogden, Brogden & Brogden, Andalusia, for appellees.

MERRILL, Justice.

This is an appeal from the Covington County Circuit Court, in Equity, from a ruling of the court overruling demurrers to the bill of complaint as last amended.

Complainants are the children and heirs at law of Henry Barnes, deceased, and the respondent is the W. T. Smith Lumber Company.

The bill as last amended shows that on January 13, 1914 one William M. Barnes and wife executed a mortgage on one hundred acres of land to George M. Foreman to secure the payment of $700 and interest. In October 1919 William M. Barnes and wife conveyed all their interest in the property to Henry Barnes, subject to a

$500 mortgage in favor of Foreman. Henry Barnes took possession of the property and he and his family resided on it as their homestead. Henry Barnes died intestate in 1921, and this property was all the real estate that he owned, did not exceed one hundred and sixty acres in area, and did not exceed $2,000 in value. He left surviving him his widow, Carrie Barnes, and five minor children, whose ages at that time ranged from eleven years to one year. The lands were never set apart to the widow and minor children or to either or any of them as a homestead. There was no administration of the estate of Henry Barnes, deceased, nor has there been a judicial determination of the insolvency of said estate.

The law date of the note, which was secured by the mortgage, was January 13, 1924. On July 14, 1925, George N. Foreman transferred and assigned all his interest in the note and mortgage to the respondent W. T. Smith Lumber Company. It is alleged that sometime during the year 1925 the respondent persuaded Mrs. Carrie Barnes, the widow of Henry Barnes, deceased, to sell the timber on the land to respondent, and that respondent agreed to pay not less than $400 for the timber and credit the mortgage with the value of the timber. That respondent told Mrs. Barnes that it did not want the land but only wanted the timber and it would never sell the land, and that Mrs. Barnes, relying on such representations, made no effort to pay any more on the debt, if in fact any debt remained. In 1934 Mrs. Barnes failed to pay taxes on the land, but did pay them in 1935. In April 1935 the respondent foreclosed on said land. About five months after the foreclosure the lands were sold to the State of Alabama for default in payment of the 1934 taxes. Mrs. Barnes along with some of her children moved from said land sometime in 1936, and immediately respondent took possession of the land under color of the foreclosure proceedings or by virtue of a purported redemption under the tax sale. Respondent tore down and removed from the land the home in which the complainants had lived. Respondent bought the land at the foreclosure sale for the sum of $580 under the terms of the mortgage.

The bill alleged that the value of the timber cut and removed by respondent in 1925 equaled or exceeded $580 and paid and discharged the debt in full, and that as remaindermen they were entitled to the timber and the growth thereon from 1925 until 1935; that the foreclosure sale is voidable and irregular in that the terms of the mortgage were not followed in the foreclosure sale. That Mrs. Barnes and complainants relied on respondent to treat them right, but respondent took advantage of their ignorance, took the timber in 1925, and let the debt run until 1935 before they effected an invalid foreclosure under the cloak of fraud. The bill further alleged that the foreclosure was void; that the deed made by respondent to respondent by virtue of said foreclosure constitutes a cloud on their title; that the life estate in said land is still outstanding in Mrs. Carrie Barnes Ballard, widow of Henry Barnes, deceased; that since she is still alive, complainants are not entitled to present possession of the land and as a consequence have no adequate remedy at law to protect their remainder interest in said land and their interest may be destroyed by a lapse of twenty years from the date of said void foreclosure, unless the cloud is removed from their title.

Complainants prayed for a decree that the mortgage debt was paid in full or had been paid in full prior to the foreclosure in 1935; that the foreclosure sale was completely void, and that the foreclosure deed is a cloud on complainants' remainder interests, and that the same be cancelled and held for naught.

The respondent demurred to the bill on the following grounds:

"1. There is no equity in the bill as last amended.

"2. There is no equity in the aspect of the bill as last amended which declares that the mortgage was paid in full at the time of the foreclosure.

"3. If the mortgage in question was not paid in full at the time of the foreclosure, then and in that event, the

allegations of the bill fail to show any irregularity in the foreclosure and the complainants had only two years in which to redeem the property.

"4. It is shown by the allegations of the bill as last amended that the complainants are barred by the statute of limitation of two years.

"5. It is shown by the allegations of the bill as last amended that the minors had only 3 years within which to ratify a void foreclosure after becoming of age and shows that all of the complainants were over 24 years of age at the time of the filing of the bill.

"6. It is shown by the allegations of the bill as last amended that the complainants are guilty of laches in that more than twenty years have elapsed since the matters and things set up in the bill as last amended to show that the mortgage has been paid occurred more than twenty years prior to the date of the filing of the bill of complaint.

"7. The allegations of the bill as last amended show that the complainants are barred by prescription since more than twenty years have elapsed since the transaction with reference to the payment of the mortgage indebtedness occurred more than twenty years prior to the date of the filing of the bill of complaint in this case."

The court overruled the demurrers, and respondent appealed.

It will be noted that when the timber was removed in 1925, the age of the oldest complainant was fifteen, the age of the youngest five. When the family moved away from the property in 1936, after the foreclosure sale and after the tax sale, three of the children were twenty-one years of age or over, one nineteen and one sixteen. In 1941 the youngest child became twenty-one years of age. The bill in this cause was filed in 1952, eleven years later.

Here, the alleged fraud, the alleged trespass in cutting the timber, and the alleged payment of the mortgage took place in 1925, more than twenty-five years before the filing of the bill. Considered alone, these acts would be barred by the rule of prescription. "Since an early period in this state, prescription has been in force, created by the chancery court as a rule of repose, and it is thus stated in McArthur v. Carrie's Adm'r, 32 Ala. 75, 88, 89, 70 Am.Dec. 529, by Stone, J.: 'In this, as in most of the States of this Union, there is a growing disposition to fix a period, beyond which human transactions shall not be open to judicial investigation, even in cases for which no statutory limitation has been provided. * * * By common consent, twenty years have been agreed on, as a time at the end of which many of the most solemn transactions will be presumed to be settled and closed.'" Wilkerson v. Wilkerson, 230 Ala. 567, 571, 161 So. 820, 822.

But assuming, without conceding, that there was no discovery of any claim by respondent to the land in 1925, we next come to 1935, with the foreclosure sale in April, and the tax sale in October. That was followed in 1936 by the moving away of complainants, three of whom were twenty-one years of age or older, the respondent going into possession and the tearing down of the home located on the lands. If there had been no notice or discovery prior to 1936, there was ample reason then to know of appellants' claim to the lands. We agree with the trial court that the allegations of the bill and the exhibits attached thereto "show that the mortgage foreclosure met all legal requirements with respect thereto".

On original consideration we perhaps did not fully treat all the matters insisted on by appellees and we therefore withdraw the remainder of that opinion and substitute the following.

As already stated complainants allege that the foreclosure was voidable, or in the alternative, void. If voidable, the decisions fix two years as a reasonable time for a mortgagor to elect to disaffirm the sale, and, until disaffirmed, the foreclosure stands and cuts off the right of redemption. Alexander v. Hill, 88 Ala. 487, 7 So. 238. But as to infant heirs of the mortgagor, if the mortgagor was dead at the time the sale was made, they are, by analogy, allowed two years after they attain their majority

to disaffirm it, and the consequent right to redeem upon such disaffirmance. But the law requires diligence of the mortgagor, or those holding under him, in the assertion of this right, and, in the absence of special circumstances, holds him to have waived the right, and to have affirmed the sale, unless he elects to the contrary within two years. First National Bank of Opp v. Wise, 235 Ala. 124, 177 So. 636; Canty v. Bixler, 185 Ala. 109, 64 So. 583.

Here the bill shows affirmatively that all the children of Henry Barnes, deceased, were over twenty-four years of age when the bill was filed.

The main allegation relied upon by complainants, and the one upon which the lower court sustained the bill, was that the foreclosure sale in 1935 was void because the mortgage debt had been paid prior to foreclosure.

In the case of Liddell v. Carson, 122 Ala. 518, 26 So. 133, 135, the Court said:

"The primary object of this bill is not to redeem the lands sold under foreclosure by disaffirming the foreclosure because the mortgagee purchased at his own sale, without power in the mortgage authorizing him to do so. Its gravamen, as evidenced by its allegations and prayer, is, to have the sale set aside on the alleged grounds, that Liddell & Co., who owned the mortgage by transfer and assignment, had no right to foreclose it and become the purchasers at the foreclosure sale, for the reason that the mortgage debt had been fully paid, and no right of foreclosure existed."

And further in the opinion it was said:

"As we have shown, this is not properly speaking a bill to redeem, but one to set aside a mortgage and the sale thereunder, because it had been satisfied, and no longer remained a lien on the property mentioned in it. It was said in Askew v. Sanders, supra [84 Ala. 356, 4 So. 167]: 'The limitation which bars the right of relief in such case, is the same within which an action for the recovery of lands may be brought,—ten years.' "

In Stockdale v. Cooper, 193 Ala. 258, 69 So. 110, 111, the Court, speaking through Anderson, C. J., said:

"It is well settled in the case of Askew v. Sanders, 84 Ala. 356, 4 So. 167, that, where there has been a foreclosure of the mortgage, the mortgagor has only 2 years within which to redeem, but, if there was no foreclosure, that is, if the attempted foreclosure was abortive, the mortgagor would have 10 years within which to act, but no longer. Here there was no attempt to foreclose, but the assignee of the mortgage went into possession of the land under the mortgage, and the complainants had 10 years thereafter within which to file the bill for cancellation or for an accounting and redemption, but no longer, unless laboring under a disability covered by the statute."

The mere fact that a bill alleges that a foreclosure was void does not necessarily give equity to the bill. In both Rudisill v. Buckner, 244 Ala. 653, 15 So.2d 333, and Jones v. Caraway, 205 Ala. 327, 87 So. 820, complainants alleged a void foreclosure, but in each instance demurrers were sustained.

Complainants here were chargeable with notice of the mortgage because their father was the vendee of the mortgagor and he purchased subject to the mortgage. The bill shows on its face that respondent went into possession under the foreclosure in 1936 and for aught appearing has been in possession since that time. Complainants took no action until 1952,—a delay of seventeen years from the foreclosure and sixteen years from the entry of the possession on the part of respondent.

Counsel for complainants in their excellent brief insist that the only real issue in the case is that complainants as remaindermen have twenty years to redeem from a void foreclosure sale, especially in the event the life estate is still outstanding, and they cite many cases to support this principle.

In this State the Court realized that there should be some relaxation or exception to this rule, and since 1888 when the Court rendered the decision of Woodstock Iron Co. v. Fullenwider, 87 Ala. 584, 6 So. 197,

this Court has said that a remainderman not in possession and with no right to the immediate possession must under some circumstances file a bill to remove a cloud from his remainder estate during the life of the life tenant to escape a charge of laches. This principle has now become the settled law in this State, and is distinguishable from the many cases which hold that the remainderman is under no duty to act until the termination of the life estate when the life tenant has attempted to convey the fee.

Here these complainants are seeking the enforcement of an equitable right upon the establishment of which their title and interest depend. The enforcement of this equitable right was available to them from the time of the foreclosure and the taking of possession by the respondent, and the respondent's possession was adverse to them even though the life tenant was still alive.

 This Court in Moss v. Davitt, 255 Ala. 513, 52 So.2d 515, 518, said:

"The train of events on which the complainants rely began more than 20 years prior to the institution of this suit. This court has often held that claims of property rights which have been permitted to slumber without assertion or recognition for 20 years are presumed to have no legal existence. Jellerson v. Pettus, 132 Ala. 671, 32 So. 663; Black v. Pratt Coal & Coke Co., 85 Ala. 504, 5 So. 89; Kidd v. Borum, 181 Ala. 144, 61 So. 100; Oxford v. Estes, 229 Ala. 606, 158 So. 534. But some of the events in the train of events occurred less than 20 years before the institution of this suit. In such a situation laches in the sound discretion of the court can take up where prescription leaves off. Cook v. Castleberry, 233 Ala. 650, 173 So. 1; Courson v. Tollison, 226 Ala. 530, 147 So. 635. See 30 C.J.S., Equity, § 114, page 526."

Many of our cases define laches. In Ussery v. Darrow, 238 Ala. 67, 188 So. 885, 888, it is said:

"The principle of laches is as follows: 'Where, from delay, any conclusion the court may arrive at must at best be conjectural, and the original transactions have become so obscured by lapse of time, loss of evidence, and death of parties as to render it difficult if not impossible to do justice, the complainant will by his laches be precluded from relief; and it is not even necessary that the court should be satisfied that the original claim was unjust, or has been satisfied. And this is true even though the demand is not barred by the statute of limitations, nor under the ban of the doctrine of prescription.' Bromberg v. First National Bank, 235 Ala. 226, 178 So. 48, 53, and cases cited, 8 Alabama Digest, Equity, ☞72, p. 448; Courson v. Tollison, 226 Ala. 530, 147 So. 635; Dunn v. Ponceler, 235 Ala. 269, 178 So. 40."

██ In Wragg v. City of Montgomery, 245 Ala. 362, 17 So.2d 173, 174, the Court said:

"A demurrer will lie for laches as well as for statutory limitations appearing on the face of a bill of complaint, and we may add to a claim under the circumstances of this case. And where the charge of laches rests upon delay, which appears from the face of the bill to have been short of the statute of limitations period, circumstances which would operate to destroy the right asserted by the bill should be offered in defense; but if the bill on its face shows a lapse of time in excess of the period of limitation, special matters obviating the rule of analogy between laches and limitations should be set up in the bill. Fowler v. Alabama Iron & Steel Co., 164 Ala. 414, 51 So. 393."

Appellees admit that they have no statutory right of redemption under the decision in Land v. Cooper, 244 Ala. 141, 12 So.2d 410.

██ The reason for the application of the rule of laches in cases of this kind is well stated in Randolph v. Vails, 180 Ala. 82, 60 So. 159, 164, where the court sustained a demurrer to the bill filed *nine* years after the sale instead of seventeen years as here. We quote from the opinion in that case:

"We are led to make these observations because they tend to illustrate the importance of the enforcement by

170

courts of equity of the doctrine of laches. The proper enforcement of the salutary rules growing out of that doctrine not only tends to *protect* the innocent or the unwary in their *rights,* but protects them, also, from the annoyance, the expense, and uncertainty of litigating stale demands. While, under all the facts set up in the bill of complaint, we are inclined to the opinion that the complainants may have been entitled to more than 2 years within which to assert their rights in a court of equity, we do think that as the complainants waited 9 years after the mortgage sale before filing this bill they were guilty of such laches as precludes their right to obtain, in a court of equity, the relief prayed for in the bill.

"It must be remembered that the public is interested in the stability and integrity of title to land, and that it is much easier to establish or disprove uninterrupted adverse possession for a long period of years than it is to establish or disprove the existence of some isolated fact, dependent upon the recollection of witnesses, after the lapse of the same period of time. A purchaser of land from a party in possession, who has been in possession of that land under a purchase at a mortgage sale, which appears to have been regularly made, not 2 years, but 9 years, before, and whose possession has been uninterrupted and hostile, under claim of right, for that period, has a right to presume that, as the statutory period for the redemption of such land has so long expired, and no suit has been instituted in any court questioning the validity of the sale, the title to the land is not only *valid* but *unassailable*

in any court. We can see no reason for extending the period within which a suit like the present can be instituted, under facts similar to the present, to 10 years. The statutory period of 2 years within which land may be redeemed furnishes, by analogy, the rule for ordinary cases of this character; and while, in the application of the doctrine of laches, courts of equity will be guided largely by the *facts of each particular case,* and they will, as we have already said, never come to the relief of him who, with a full knowledge of all of the facts, has acquiesced for such a period of time 'as affords cogent evidence of a waiver and abandonment of the right.' Ponder v. Cheeves, 90 Ala. 117, 7 So. 512; Stephenson v. Harris, 153 Ala. 462, 45 So. 196.

"It has been frequently held that a foreclosure under the power contained in a mortgage is equivalent to a strict foreclosure in equity, and without further discussion we think it apparent, under the facts set up in the bill, that the rights of the complainants have been lost by their laches. Stephenson v. Harris, 153 Ala. 462, 45 So. 196."

We think the circuit court erred in overruling the demurrers to the bill of complaint which pointed out laches, and for that reason the cause should be reversed and remanded.

Original opinion withdrawn in part and this opinion substituted.

Reversed and remanded, and application for rehearing overruled.

LIVINGSTON, C. J., and SIMPSON and GOODWYN, JJ., concur.